Heirs and Legatees of MARTHA PORTER's Estate, *vs.* WILLIAM T. HEYDOCK.

Where a principal administration is granted in another state, and an ancillary administration in this state, it appertains to the authority of our courts to settle and adjust the accounts of the administrator, for effects received in this state; and it is discretionary with them to order distribution here, or to remit the effects to the place of the principal administration for that purpose. Although the latter is the usual course, still it will not be adopted, where the rights of those entitled to the estate would be endangered by it.

Appeal from the decree of the probate court. The facts sufficiently appear from the opinion of the court.

*Upham for defendant.*—1. The commissioner's report shows that the testatrix had her domicil in New Hampshire when she died, and that administration was taken there on her estate by the defendant; and also that the defendant took an ancillary administration on the same estate here. Now it is contended

by the defendant that the final settlement and distribution of the estate must be made in New Hampshire, and that the heirs and legatees must apply there for such portions of the estate as they are entitled to receive.—*Richards* vs. *Dutch*, 8 Mass. Rep. 506 *Dawes* vs. *Boylston*, 9 Mass. Rep. 337, 355. *Dawes* vs. *Head et al*, 3 Pick. Rep. 128. *Andrews* vs. *Herriot*, 4 Cowen's Rep. 508. *Holmes* vs. *Benson*, 4 J. Chip. Rep. 460. 2 Vt. Rep. 294. 2 Aik. Rep. 31.

2. That the said William T. was improperly charged by the commissioner with $4000, the amount of sales of the said Martha's real estate in Newbury. Defendant insists, first, that he sold it as executor of the last will and testament of the said Martha, and by virtue of the third clause of the same; and he cannot be called upon to account for the purchase money by the probate court in this state.—Vide authorities above cited. Secondly, if defendant can be called upon to account here for the purchase money, he should have been charged only with $3100, the amount of his bid for the estate.

3. The defendant should have been allowed his claim for commission on the sales made by him of the estate of the said Martha.

*Smith and Peck for plaintiff.*—Defendant files exceptions to the report of commissioner; first, that the probate court have no jurisdiction of the case further than to decree the payment of debts allowed by the commissioners in Vermont, and the expenses of administering here, inasmuch as the testatrix was an inhabitant of and resident in New Hampshire at the time of her death, and that the principal administration was in New Hampshire, and that the administration in Vermont is merely ancillary to the principal administration. It is true the administration in Vermont is ancillary to the administration in New Hampshire; but we apprehend the case stands on precisely the same grounds, as it respects the jurisdiction of the probate court in Vermont, that it would have stood provided there never had been any administration elsewhere.

The administrator in New Hampshire must collect the debts due there, and the administrator in Vermont must collect the debts due here; and it makes no difference that the same person is administrator in each state; for when he is acting in the capacity of administrator in Vermont, he acts by virtue of the authority which he derives from the probate court in Vermont.

ORANGE,
March,
1834.
──────
Heirs of Smith
vs.
Heydock.

No foreign administrator could collect a debt due in Vermont by virtue of his appointment abroad; (*Goodwin* vs. *Jones*, 3 Mass. Rep. 515) and where he has taken administration in Vermont, he has power over all the estate of the deceased in Vermont, (Vide Comp. Stat. 337, sec. 3) and is liable to settle and account with the probate court granting the letters of administration for all the property that came to his hands within the jurisdiction of said court.—*Jennison* vs. *Hapgood*, 2 Aik. Rep. 31—*Same* vs, *Same*, 2 Vt. Rep. 294, 298. *Selectmen of Boston* vs. *Boylston*, 2 Mass. Rep. 384, 393—11 Mass. Rep. 268–9.

2. The second exception filed to the report of the commissioner is, that he has allowed as a claim against the executor advances which he received on the sale of real estate, the executor having bid or bought in certain real estate, and immediately it went for the sum of seven hundred dollars more than he gave for it, and claims to hold the same to himself. If the trustee buy in the trust estate and afterwards sell it at a profit, he may be compelled to account for the proceeds of the second sale.—*Dareone* vs. *Fanning*, 2 Johnson's Chan. Rep. 252.

It seems to be a well settled principle, that a trustee shall not be allowed to take advantage of his situation and make profit to himself of the trust estate.—1 John. Chan. Rep. 36, 42. 2 Vt. Rep. 276.

The opinion of the court was pronounced by

PHELPS, J.—Martha Porter, it appears, was a citizen of New-Hampshire, and died there, leaving a will. The appellant took letters testamentary upon her estate (or letters of administration, which does not appear, nor is it important) in that state. But the testator being possessed of a large estate situate in this state, it became necessary to take letters of administration in this state also, with the will annexed; which it seems was done. By virtue of this authority, the appellant possessed himself of a large property, and in pursuance of the direction of the will, sold real estate to a considerable amount, for which he has not accounted. It seems that the appellant has recently been called upon, by the probate court in this state, to render an account of his administration, and that a decree passed in that court against him, from which he has appealed to this court. The account has been referred to a commissioner, who has reported a balance in the hands of the appellant of $7145,

ORANGE,
March,
1834.

Heirs of Smith
vs.
Heydock.

33--100ths. Exception is now taken to this report, partly upon the ground of certain allowances made by the commissioner, but mainly upon an alleged want of jurisdiction, either in the probate court, or in this court, over the subject matter.

And first, he objects that the commissioner has charged him with the sum of $4000 00 for certain real estate sold at auction, which estate he alleges was sold for the sum of $3100 only. The facts as reported are simply, that the estate was sold at auction and bid off by the appellant himself, at the sum of $3100, but shortly afterwards sold by him at private sale for the sum of $4000. Upon this objection it is sufficient to remark, that an executor or administrator is considered as a trustee, and, as such, is never permitted to speculate upon his trust, or to make a profit upon a purchase and re-sale of the trust property. The reasons for this rule are too obvious to require explanation, and the rule itself is, at this day, too well settled to admit of debate.—The principal objection, however, is the want of jurisdiction. The testatrix, he says, was domiciled in New Hampshire—died there—administration was granted to the appellant there—the administration in this state is merely ancillary—that the final settlement and distribution of the estate must be made there—and that the heirs and legatees must apply there for such portions as they are entitled to.

Admitting all this to be true, it by no means follows that there is a want of jurisdiction in this court, or a defect of power to enforce a full accountability, for all the effects of the testator, lying in this state. It is universally conceded, that the jurisdiction over the vacant effects of deceased persons is strictly local; and that all authority to administer upon or dispose of such effects, must be derived from the *lex rei sitæ*. Hence it has been held, that letters of administration granted in one state are of no authority in another; but whenever the effects of a deceased person are situated in different sovereignties, administration must be taken in both. This has been repeatedly decided by our courts, and, so far as we are made acquainted with the decisions of our sister states, is so held in all; except in one state, where the subject is otherwise regulated by statute. See *Lee* vs. *Havens*, Broughton's Reports. *Mott's Administrator* vs. *Barret*, 5 Vt. Rep. In conformity with this rule, it has also been held, upon a principle of reciprocity, that an administrator appointed in any state, will not be held to ac-

ORANGE,
March,
1834.
———————
Heirs of Smith
vs.
Heydock.

count there, for effects received in another jurisdiction, by vir-
tue of an authority conferred by the latter. This has been the
uniform law of Massachusetts, the decisions of whose courts
are cited in the argument, and seems to flow, as a necessary
consequence, from the concession of jurisdiction to the *locus
rei sitæ.* See Story's Conflict of Laws, 422, note—and the
numerous authorities there cited.

These principles would seem to be decisive of this case. If
the power of granting administration of these effects is con-
ceded to appertain exclusively to our probate courts, it neces-
sarily follows, that their jurisdiction remains until the adminis-
tration is consummated. The idea that there is vested in our
courts a sort of inchoate or imperfect jurisdiction, which ex-
hausts itself *in limine,* or yields, at any stage of the proceed-
ing, to the paramount authority of a foreign jurisdiction, is not
only absurd in itself, but is inconsistent with that sovereignty
which is the essential attribute of every independent state.

It is argued, that we have the power to enforce an account-
ability in this case, so far as to cause payment of all debts due
to our citizens from the testator, but this object being effected,
that, as to the distribution and final disposition of the surplus,
whether among heirs or legatees, the subject is regulated by the
*lex domicilii* of the testator, and is exclusively within the ju-
risdiction of the courts of New Hampshire; and that, there-
fore, we have no power to require an account, for the benefit
of the heirs or legatees, or to make a final decree in their favor.

That the *lex domicilii* would govern the distribution of the
personal effects, if there be any, in the absence of a will, is
conceded; but this no more conflicts with our jurisdiction, than
does the sale which applies the *lex loci contractus* to an ordi-
nary contract. But as to the real estate, its descent would be
regulated by our laws, and, even in case of will, it must, to be
effectual (i. e. as to real estate) conform to the requirements
of our laws. See Story's Conflict of Laws, 398, and authori-
ties there cited.—Ibid. 404–405. With respect to the real
estate, therefore, it is not only subject to our jurisdiction, but
must be disposed of conformably to our laws. But however
this may be, the rule which is to govern us has no bearing up-
on the question of jurisdiction. I have already shown, that if
jurisdiction over this subject exist at all, in our courts, it must
be ample and perfect—fully commensurate with the necessities
for its exercise; and that in conformity with the settled law on

this subject, the courts of New Hampshire could not call the appellant to account there, for effects received here. If they would not, it must be upon the ground, that the power appertains exclusively to the courts of this state. In short, the accountability is to us if to any one.

ORANGE,
*March*,
1834.

Heirs of Smith
*vs.*
Heydock.

In the very nature of the proceedings in the probate court, no such objection could be admitted. The statute requires the will to be proved in our courts, and letters of administration to be taken in this state, before the executor can lawfully act. Bonds also are required to be given, as an indispensable prerequisite. But this provision is nugatory, unless an account can be required, and an account is useless, unless the surplus or balance can legally be disposed of. The truth is, that the whole subject is not only within the jurisdiction of our courts, but it is within their exclusive control, until the final decree is made. When that decree comes to be made, it may be a serious question, whether this court will proceed to make a distribution among those entitled under the will, or will decree the amount, in the hands of the appellant, to be transferred to New Hampshire, for distribution there. And it is here, and here only, that the doctrine of ancillary administration has any application. But whether the decree be made in one form or the other, it not only appertains to the jurisdiction of this court to adjust the account, but such a proceeding seems a necessary prerequisite to a decree in either shape. It is insisted that we are bound to order the fund paid over to the administrator in New Hampshire, and cannot legally order a distribution. This, we conceive, is a mistake. The rules on this subject are discretionary and not imperative. There is no power in the courts of that state, to arrest our proceedings. They cannot be removed thither by *certiorari*, nor can those courts operate upon us, by writ of mandamus or prohibition. The rules relied on by the appellant are rules of comity and convenience merely. They are not submitted to by courts from necessity, but are adopted by them as salutary and expedient, and are applied whenever their operation is such, but not where they would embarrass or defeat the administration of justice. The whole system, suggested by the supreme court of Massachusetts, in the case of *Dawes* vs. *Head*, cited by the counsel, is of this character. However admirably it may be adapted to the liberality of modern times, and to the purpose of facilitating and promoting justice, where concert of action is necessary between

ORANGE,
March,
1834.

Heirs of Smith
vs.
Heydock.

the courts of distinct sovereignties, it rests upon courtesy and expediency alone. It is placed upon this footing by the learned chief justice of that state, who delivered the opinion. After speaking of the remission of effects to a foreign jurisdiction for distribution, he says, "If any part is to be retained for distribution here, it will be only by virtue of some exception to this general rule, *or because the parties seek their remedy here;* in which case, it might be within *the legal discretion* of the court here, *to cause distribution or to remit; according to the circumstances and condition of the estate.*" The same doctrine was held by judge Story, in the case of *Harvey vs. Richards,* 1 Mason, 408. The defence in that case was similar to that here relied on; and the same argument was urged against the exercise of the authority of the court, viz: "That as national comity requires the distribution of the property according to the law of the domicil, the *same comity* requires that the distribution should be made in the same place." The learned judge comes to this conclusion, "that whether the court here ought to decree distribution, or remit the property abroad, is a matter, *not of jurisdiction,* but *of judicial discretion,* depending upon the particular circumstances of each case;" "that there ought to be no universal rule on the subject; but that every nation is bound to lend the aid of its own tribunals, for the purpose of enforcing the rights of all persons, having title to the fund, when such interference will not be productive of injustice or inconvenience, or conflicting equities."

The case of *Richards* vs. *Dutch,* relied on by the appellant, proves nothing inconsistent with what has been said. The court there lay down the general rule, that "legatees must resort to the country of the testator where the will was originally proved, and by the laws of which the effects are to be distributed," &c. There were no special circumstances in that case, requiring a departure from the general rule, nor were the court called upon to express any opinion, as to the effect of such circumstances. It is further to be observed, that the defendant rested specifically upon a claim for a legacy, and the case was the same as if he had sued for it. There was then an obvious impropriety, in allowing the legacy, before the solvency of the estate had been ascertained. Had the proceeding been in the probate court, and its object simply to call the administrator to account, and ascertain the amount of effects in his hands, the question would have been very different. Indeed the late

judge Jackson, of counsel for the plaintiff, argued as an objection to the allowance of the legacy, that it belonged to the probate court to have an account, that the amount of assets might be ascertained, and that it might appear whether there were assets, remaining after payment of the debts, for the purpose of the legacy. In *Dawes* vs. *Boylston*, the suit, although nominally in favor of the probate judge, was, in reality, in behalf of a legatee, and was so treated by the court. The remarks already made upon *Richards* vs. *Dutch*, will serve to explain this case. The court, in this case, recognize the power of the probate judge to enforce a bond of administration, for the purpose of procuring an inventory or account of assets, for the use and benefit of whoever may be concerned. See also 4 Mass. Rep. 318. The two cases of *Jennison* vs. *Hapgood*, one in this state, (2 Vt. Rep. 244) the other in Massachusetts, (10 Pick. 77) are authority in favor of the doctrine here advanced. In the former, the jurisdiction in question was assumed by this court; and in the latter, that jurisdiction was in terms conceded to us.—In support of our opinion, we might cite further the opinion of judge Story, who says, (Con. of Laws, 421) " In regard to the title of executors and administrators, derived from a grant of administration, in the country of the domicil of the deceased, it is to be considered, that the title cannot, *de jure*, extend beyond the territory of the government which grants it. As to such property, situate in foreign countries, the title, if acknowledged at all, is acknowledged *ex comitate*; and, of course, is subject to be controlled or modified, as every nation may think proper, with reference to its own institutions and policy, and the rights of its subjects. And again, on page 423, speaking of an ancillary administration, he says, " Still, however, the new administration is made subservient to the rights of creditors, *legatees, and distributees*, resident within the country, and the residuum is transmissible to the foreign country, only when the *final account is settled, in the proper domestic tribunals.*" I have been thus particular, because on opening this case, doubts were entertained by some of the court as to the power of the court to make any other decree, than simply to refer the subject of final distribution to the courts of New Hampshire.

On the whole, we are of opinion, that the right of granting administration, as to the estate of the testator within this state, was vested exclusively in the courts of this state. That this

ORANGE,
*March,*
1834.

Heirs of Smith
*vs.*
Heydock.

ORANGE,
March,
1834.

Heirs of Smith
vs.
Heydock.

power necessarily includes that of calling the administrator to account—of adjusting the account—ascertaining the amount of assets in the administrator's hands, of decreeing the final disposition of the same, and of enforcing that decree, by means of the administration bond. In respect to the bond, it would seem from the case of *Pickering* vs. *Fisk*, ante. p. that it could be enforced only in this state; and it could not be enforced here, without a decree disposing of the assets. In making that decree, it rests in the judicial discretion of this court, to order the fund transmitted to New Hampshire, for distribution there, or to decree a distribution here. In the exercise of this discretion, we are to have regard to the exigences of the case; and, although the general practice may be, to remit the fund for the distribution abroad, still this will never be done, under circumstances, where, instead of facilitating a final adjustment, and securing the rights of all, it would tend to embarrass or prevent that adjustment, and jeopardize the rights of the parties.

What then do the circumstances of this case require?

It is suggested, that the security, given by the appellant to the court in New Hampshire, is not sufficient in amount, to cover all the effects received in both states. As the appellant is the administrator in both states, a decree made here, that he pay over to the administrator in New Hampshire, would only serve to change the capacity in which the appellant is responsible, and probably release the security taken by the probate court in this state. No actual payment would be necessary, but only a transfer in the account, which the law would make *ipso facto*, upon such a decree. If the security taken abroad is not sufficient, and that taken here is released, the decree might prove fatal to the interest of those for whose benefit it is intended. If the security would not be released, still, if it become necessary to enforce it, the heirs or legatees, whoever has the interest, must be recognized by our courts as prosecutors; in which event, they must appear as claiming in the capacity of volunteers, and subject themselves to the objection already urged. Besides, it is by no means clear, that a decree of distribution made there, could be regarded as coming within the purview of the bond taken here, or that any suit could be sustained upon that bond, for a non-compliance with such decree. The bail in that state might be responsible, yet, supposing the appellant insolvent, and the effects already wasted, it certainly admits of doubt, whether it is competent for us thus to transfer

the responsibility for an antecedent default. Were it compe- tent, the propriety and justice of such a procedure, are extremely questionable. Upon the whole, we are disposed to refer the distribution to the courts of New Hampshire, so far as it can be done consistently with the security of the rights of those concerned. Our decree is, in substance, that the report of the commissioner is accepted, and the balance therein stated is found to be assets in the hands of the appellant, subject to distribution—that the adjustment be reported to the proper tribunal in New Hampshire, and that the amount be paid to such persons, and in such proportions, as shall be found entitled to it, by decree of ██court of that state, in which the will was originally proved, ██ letters testamentory were granted; and, in default on such payment, the parties concerned are left to their remedy on the administration bond.

Decree accordingly.