## Elizabeth H. Still et al. *v.* The Corporation of Woodville et al.

1. DOMICILE: CHANGE OF: ACQUISITION OF NEW: CASE IN JUDGMENT.—If an invalid sell his mansion-house and other property, or the domicile of his birth, and leave that domicile for the purpose of travelling, so as to regain his health or prolong his life, and shortly afterwards die on his travels, without having acquired any permanent abode at any place, he has not thereby lost the domicile of his birth, notwithstanding he may have had no expectation of returning to it.

2. SAME: CONFLICT OF LAWS: JURISDICTION TO PROBATE FOREIGN WILL.—The Court of Probates in this State have jurisdiction to admit to probate in the first instance the will of a person domiciled in another State at the time of his death, if there be property belonging to him situated in this State.

APPEAL from the Court of Probates of Wilkinson county. Hon. Felix Embree, judge.

This was a petition filed in the court below by the appellants (one of whom is the mother and only surviving parent of John W. Brown, and the other the only surviving brother of said Brown), seeking to set aside the probate of the will of said Brown, and the grant of letters testamentary on his estate.

The petition attacks the validity of said probate and order granting letters testamentary, upon the ground that said J. W. Brown was, at the time of his death, domiciled in, and a citizen of the State of Louisiana, and that all of his property, except a very small portion of it, was also situated in said State of Louisiana, and that therefore the Court of Probates of Wilkinson county had no jurisdiction over the subject.

The petition states that by the laws of Louisiana the petitioners are the next of kin of said Brown, and that Mrs. Still, his mother, is entitled by said laws, "as forced heir," to one-third part of his estate.

The answer averred that the domicile of the testator was in Wilkinson county, and that all his property, except one or two slaves attendant on his person, was situate in said county, or *in transitu* thither at the time of testator's death.

Still et al. *v.* Corporation of Woodville et al.

The following facts in relation to these issues appear to be established by the proof in the record :

That the testator, at the time of his death, was about thirty-three years of age, and had been born and had always resided in Wilkinson county, until the latter part of the year 1856. That for several years before his death, which took place on the first day of March, A.D. 1857, he was the owner of a plantation and slaves in said county. That he was afflicted with consumption, and his health gradually declining, he sold out his plantation and most of his slaves in the fall of 1856, and then went to Bayou Sara, in Louisiana, and remained there a short time ; and that, in December, or January, 1857, he went to New Orleans, where he had rooms at the house of a friend, and was under the care of a physician ; and on the 10th February, 1857, he went to Texas, where he died on the 1st of March, 1857. On the 14th January, 1857, whilst in New Orleans, he made his will, which he deposited with Lee, his friend, together with all his other valuable papers, which he directed to be sent to his executor, in Wilkinson county, in this State, if he should die before his return.

Robinson, a witness for complainants, testified, that in November or December, 1856, the testator came to Bayou Sara, Louisiana, bringing with him some slaves ; he had rooms fitted up at the house of Mr. Irvine, and asked witness to rent a house for his negroes in the town. He said he had sold out in Mississippi, and intended to remain permanently in Louisiana, and to make that State his home. He made this statement frequently to witness. Witness was intimate with Brown, and went with him as a travelling companion to Texas, whither Brown went to benefit his health, and was with Brown when he died. In December, 1856, or January, 1857, Brown went to New Orleans, to be under the medical treatment of Dr. Stone, who resided there. Witness thinks that Bayou Sara, and not New Orleans, was the domicile of said Brown. Testator had two slaves with him when he died, and other property, which witness brought back and delivered to Thomas W. Brown, at Bayou Sara.

Irvine, another witness for complainants, stated, that about 1st December, 1856, Brown moved to Bayou Sara, Louisiana, bringing with him his slaves, and two mules. That he had rooms fitted up

at his own expense at witness's house.    That his health was very
bad, and he frequently told witness that he never intended to go
back to Mississippi, even if he should recover; but witness does
not remember to have heard him declare what place was his home.
Brown also had rooms at John L. Lee's, in New Orleans, and he
passed back and forth from New Orleans to Bayou Sara several
times during that winter.

Wagner, a witness for defendants, stated, that he was bookkeeper
of John L. Lee, who was the intimate friend and commission
merchant of testator, in New Orleans.    That he became acquainted
with testator about a year before his death, and in that time he was
frequently in New Orleans seeking the recovery of his health,
which was quite feeble.    That in the latter part of 1856 or first of
1857, he came to New Orleans, again; he then roomed at Lee's.
Witness was with him frequently, and he heard Brown say on many
occasions, that he lived in Mississippi, in Wilkinson county.    He
always spoke of that State or county being his home; witness never
heard him speak of Louisiana as his home.    Brown's property,
which was left by him with Lee, was sent to Mississippi after
Brown's death.

Boyd, a witness for defendants, stated, that he knew Brown, and
saw him in New Orleans, in 1856, on several occasions, and that he
was there as the guest of J. L. Lee, to recruit his health, which
was very feeble.

Sims testified for defendants, that he had known testator all his
life; that he had consumption; was in feeble health, and sold out
his plantation on that account.    After this he had no permanent
residence, but witness considered Wilkinson county his home.    His
near family connections all reside there.    Witness saw Brown in
New Orleans, in February, 1857; he was there under medical
treatment, and preparing to go to Texas to regain his health.

Holt, a witness for defendants, stated, that he had known testa-
tor from his boyhood.    Witness was on the same steamer with
testator when he left Bayou Sara for New Orleans, in the winter
of 1856–'57.    Brown was in very bad health, and seemed conscious
of his condition.    He conversed freely with witness about his plans
of life in the future; said he was going to Texas, and travel about
there for his health; that he did not expect to recover, but that his

physician had advised him that he might prolong his life by travelling.; that he expected to spend the remainder of his life travelling in Texas. He said nothing about returning to Wilkinson county.

Thomas W. Brown, a witness for complainants, stated, that he knew the testator very well. The testator sold his land in Wilkinson county to Yerby, about 1st September, 1856, and his slaves to witness. Witness's purchase amounted to about $16,000, and to. secure which he gave a deed in trust on land and slaves in Wilkinson county. Shortly after the sale he removed from Wilkinson county; he left with the impression that he would go to Texas. He gave as a reason for leaving the country, that "it was a cut-throat place,—he could have no health in it, and he intended to leave it, and he would not stay or make a permanent residence in any such country. His health was very feeble when he left, and he was unable without assistance to make a permanent settlement, or undertake any kind of business."

The will of Brown was dated at New Orleans, 14th January, 1857; and in the premises it recited that Brown was "of the State of Mississippi, and county of Wilkinson."

The court dismissed the petition, and the petitioners appealed.

*L. K. Barber*, for appellants,

Contended that the proof showed that Brown was domiciled in Louisiana, at the time of his death, and on this point he cited the following authorities: 5 Met. R. 588, 589; 17 Pick. R. 231; *Kilbourn* v. *Bennett*, 3 Met. R. 199; *Thorndike* v. *The City of Boston*, 1 Ib. 242; *Harvard College* v. *Gore*, 5 Pick. R. 378; *Abington* v. *North Bridgewater*, 23 Ib. 170; *Bailey* v. *Osborne*, 33 Miss. R. 128; *Hairston* v. *Hairston*, 5 Cushm. R. 704; *Burnham et al.* v. *Rangeley*, 1 Woodbury & Minot's R. 12; *Catlett* v. *Pacific Insurance Company*, 1 Paine R. 594; *Cocke* v. *Finley*, 7 Cushm. R. 127; Story, Confl. Laws, § 46.

*Van Eaton* and *Dillingham*, for appellees,

On the subject of domicile, cited 2 Parsons Cont. 91; *Bempde* v. *Johnson*, 3 Ves. 201; *Crawford* v. *Wilson*, 4 Barbour S. C. R. 518; *Johnson* v. *Twenty-eight Bales of Merchandise*, 3 Wheeler Cr. Cas. 433; *Attorney-General* v. *Dun*, 6 Mees. & Welsb. 525; 10 Pick. R. 77; 3 Ib. 370; 4 Mason, 30; 5 Greenl. R. 143.

And to show that a part of the testator's property being situated in Wilkinson county gave the court jurisdiction, they relied on *Wells* v. *Wells*, 35 Miss. R. 666; Story Confl. Laws, 895.

HARRIS, J., delivered the opinion of the court.

Appellants filed their petition in the Court of Probates for Wilkinson county, to set aside the probate of the will of John W. Brown, and to revoke the letters testamentary granted to John H. Sims, as the executor named in his will, on the ground that the Court of Probates of Wilkinson county had no jurisdiction to take probate of the will or to grant said letters.

The petition states, that John W. Brown, a resident citizen of Louisiana, died in the month of March, 1857, leaving petitioner Elizabeth, his only surviving parent, and petitioner Thomas W., his only surviving brother; that at the time of his death, and for some time previous thereto, the said decedent was domiciled in the State of Louisiana, where he had all his estate, except two or three negroes, which were left temporarily with his mother, in said county of Wilkinson; that about the 14th day of January, 1857, the said decedent, in the city of New Orleans, State of Louisiana, made his will, disposing of his estate; and that shortly afterwards he died, never having been married, and leaving his said mother and brother, " his only next of kin ;" that all the property and effects of the said decedent were illegally removed from the State of Louisiana to the county of Wilkinson, in the State of Mississippi, after his death, except the two or three negroes before referred to.

The petitioners then state that the will was probated, letters testamentary granted, appraisement made and returned; all of which are made exhibits to the petition.

The petitioners state that, according to the laws of Louisiana, the said Elizabeth is entitled to one-third part of the whole estate of the decedent, " *as the forced heir*" and only surviving parent of decedent, no just cause for disinheriting her appearing in said will.

The petitioners pray that the probate of the will be set aside, and letters testamentary be revoked, and for such other and further order and decree as may seem proper, and for general relief.

To this petition the answers of the several parties made defendants were filed, also an amended petition and answer thereto; all

of which, it is needless to notice, further than to say, that the issues presented and relied on by the parties respectively, are, first, whether the decedent, at the time of his death, was domiciled in the State of Louisiana, or in the State of Mississippi, Wilkinson county? And, second, whether, *in any view*, the probate of the will in Wilkinson county, Mississippi, *where his property was situate at the time of probate,* was not valid?

On the first point, we are satisfied that his domicile was in Wilkinson county. In his will, made after he went to New Orleans, on his way to Texas, he describes himself as of Wilkinson county, Mississippi. He appointed his executor there, directed his estate, in the hands of Lee, in New Orleans, to be sent with his will to his executor in that county, at his death, and repeatedly declared that to be the place of his residence. His mother lived there, he had spent all his life there, and never left there even temporarily to reside elsewhere, until his declining health rendered it necessary that he should give up his business and travel for the improvement of his condition.

It is true, one witness heard him say that Bayou Sara was his home; but there is no satisfactory evidence that he ever acquired, or intended to acquire, another domicile, or permanent residence, after he left Wilkinson county.

On the contrary, the whole scope of the evidence shows that *his health* induced him to abandon his business and his home in Wilkinson county, not with a view to a permanent abode anywhere else, but only to regain his health or prolong his life by travel. The case of *Hairston* v. *Hairston,* 27 Miss. R. 716, fully settles this point.

On the second point, even if the decedent had been domiciled in Louisiana at the time of his death, and the rights of petitioners were such in Louisiana as they allege them to be, still, under the facts in this case, the property, *or a portion* of it, being in this State at the time of the grant of letters testamentary and the probate of said will, the courts of Mississippi were bound to take jurisdiction of it. No other court could have reached it. This necessarily results from the independent character of our separate State governments. Their laws do not operate extra territorially. Their courts and their officers have no power in Mississippi. They must

resort to the aid of our laws, courts, and officers for security of property situate in this State, without reference to the manner in which it has come into our jurisdiction.    The authorities of Mississippi have no power to hand over to the authorities of Louisiana, for administration there, property which has been illegally removed to Mississippi, unless special provision by law had been made for that purpose.

The courts of Mississippi, therefore, take jurisdiction of the estates of decedents found in her limits, for the benefit of the true owners, and by comity they will in certain cases execute the laws of the domicile of the decedent, in case of personal estate, instead of their own law, so far as the descent and distribution of the estate is concerned.

In *Wells* v. *Wells*, 35 Miss. R. 667, it is said, by this court, that " each State has the right to regulate and govern all the property within its limits, *without regard to the residence* of the owner.    It has the right to prohibit and exclude the operation of the *lex domicilii*, if it choose to do so; but when no such prohibitory laws exist, either in express terms or of most manifest intent, the law of the domicile governs both as to transfers *inter vivos* and testamentary dispositions." *Garland, Exr.* v. *Rowan*, 2 S. & M. 634, and cases cited.

This rule is one of *comity*, to be enforced or not, according to the will of each sovereign; because all property within its limits must be bound by the laws of such sovereignty.    *Mahorner* v. *Hooe*, 9 S. & M. 274.

On the whole case, we think the decree of the court below was correct, and should be therefore affirmed.