## G. P. SPAULDING v. LUCRETIA WAKEFIELD's ESTATE.

### Executor. Measure of Care. Negligence.

1. An executor or administrator is bound to bring to the management and closing of an estate the *same care and diligence* which a *prudent man* would exercise under like circumstances. The liability of the executor for the loss of the estate *is not wholly dependent* on the question of whether he *has acted* in *good faith.*

2. It is negligence on the part of an executor to deliver a $1000 U. S. 5-20 bond, worth at the time in all the markets of the country $1200, to each of three legatees in payment of a $1000 legacy to each; and he is liable for the loss.

3. And this is so although the executor obtained the *value placed upon the bonds by the appraisers, and was told by the* Probate Court *that he could so deliver them to the legatees for what they were appraised.*

4. His duty stated, as to *knowing the law; keeping informed of the market value of the bonds;* and putting any *overplus* at interest.

5. The executor is also liable for the *premium* and *interest* on an $800 bond deposited in the bank to create a fund upon which to draw to pay the expenses of settling the estate; as it was not found by the commissioner *that the creation of such a fund was necessary.*

6. The executor was entitled to no *leniency* at the hands of the court, by, virtually, *remaining silent,* as to how much the bond brought, how much interest he received on it, whether he mingled the avails with his own funds, &c., and should, therefore, be charged with the *highest market value of the fund,* and the *highest rate of interest.*

HEARD at the September Term, 1880, VEAZEY, J., presiding. The court rendered judgment, *pro forma,* on the report in favor of the estate for $1522.79. The commissioner found, among other facts:

Mrs. Wakefield had, at the time of her decease, U. S. 5-20 government bonds of the issue of 1867, representing at their face value three thousand eight hundred dollars, on deposit at the First National Bank of Brattleboro. The appraisers appointed by the Probate Court, upon Mrs. Wakefield's estate, appraised said bonds at their face value. The executor was told by the Judge of the Probate Court that it would be proper for him to pass over three thousand dollars' worth of said government bonds, at the appraisal, to pay the three legacies of one thousand dollars each, specified in said will, but no order or decree was made by the

Probate Court to that effect. On the 2d day of May, 1874, the executor paid over to the legatees, Mariah N. Graves, Sarah M. Kenney, and Aurora E. Spaulding, each, one of said bonds of the denomination of one thousand dollars, to cancel their legacies under said will, as he supposed he had a *legal* right to do. The bonds at that time were worth, in New York, from 1.20 3-5 to 1.20 1-4. They were worth in Vermont, at the same time, a premium of twenty per cent., which would be their market value in New York or Boston, less a per-cent. off for converting them. .
. . . . If the plaintiff should be charged with the premium of twenty per cent. on the three thousand dollars in bonds, which he paid to the legatees, with simple interest thereon, from May 2, 1874, to September 14, 1880, then the above sum of four hundred and seventy-two dollars and forty-two cents should be increased eight hundred and twenty-nine dollars and twenty cents, making the sum for which plaintiff is chargeable one thousand three hundred and one dollars and sixty-seven cents. If the plaintiff should be further charged with the premium of twenty per cent. on the eight hundred dollars in bonds, which he deposited in the First National Bank of Bellows Falls, with simple interest thereon from May 2, 1874, to September 14, 1880, then the sum above stated should be increased two hundred and twenty-one dollars and twelve cents, making the sum for which plaintiff is chargeable, amount to one thousand five hundred and twenty-two dollars and seventy-nine cents.

*R. W. Clark* and *Haskins & Goodwin*, for the plaintiff.

We insist that the executor acted *honestly and in good faith* in this disposition of these bonds, and is within that " reasonable measure of prudence" required by the law. He sold them at their appraised value. See *Holmes* v. *Holmes*, 28 Vt. 765 ; *Eames* v. *Wood*, 4 Vt. 256 ; *Meade* v. *Byington*, 10 Vt. 116.

Here there is nothing to show or from which any reasonable presumption can be raised that the executor knew or supposed that these bonds had anywhere a value above their face value. We think he need look only at the contract contained in the bond itself, and might part with them under that contract. An ad-

ministrator who sells personal estate either at public or private sale without an order from the Probate Court will not be held responsible for losses if he acts in good faith. 10 Vt. 116. Here were no losses from the appraised valuation, while in the case just quoted there were losses from the appraisal.

*A. Stoddard* and *Davenport & Eddy*, for the defendant.

1. It is no excuse for plaintiff, that he supposed he had a right to give $1200 worth of bonds in payment of a cash legacy of $1000 ; or that he understood from the Judge of Probate, that it was proper to pay these legacies in bonds at par. Ignorance of the law excuses no one—and especially does it not excuse a palpable cheat.

2. The court rightly charged the executor for the value of the $800, in United States bonds which he had sold by the Bellows Falls bank, and passed to his credit. It is his fault that the information which the commissioner obtained is so meager. All presumptions are against him. To charge him with the value of the bonds and simple interest, is the least the law can do. Had he been charged with annual interest, he would have had no just cause for complaint. *Farwell* v. *Steen*, 46 Vt. 678.

The opinion of the court was delivered by

Ross, J. It is well settled that the measure of care and diligence which an executor or administrator is bound to bring to the management and closing of the estate, is that which a prudent man would exercise under like circumstances. However much of good faith and honest intention he may exercise in the discharge of his trust duties, unless he also exercises this degree of care and diligence, and the estate suffers from the lack of it, he is bound to make the loss good to the estate. Measured by this standard, we think, the delivery of a $1000 U. S. 5-20 bond, worth at the time in all the markets of the country $1200, to each of the three legatees in payment of a legacy to each of $1000 was negligence, and rendered the plaintiff liable to account for the loss to the estate. We cannot yield to the claim of the plaintiff's counsel, that his duty was discharged when he obtained the value placed upon the

bonds by the appraisers, or the amount which the government promised to pay the holder. The very fact which he urges, to wit : that such obligations were fluctuating in the market, bound him to keep informed in regard to their market value, and to use the diligence of a prudent man to take advantage of the market, and realize the most possible for the estate. Nor does what the Probate Court told the plaintiff, at all lessen the measure of care and diligence he was bound to exercise in the discharge of his duties. He was bound to know the law, and if he had doubts about his knowledge, or ability, to obtain accurate knowledge of the degree of care and diligence which he was bound to exercise, he should have declined the trust. What the Probate Court told him would have an important bearing upon his good faith in the transaction, if that were the only element entering into the determination of his liability. As these bonds were interest bearing securities, the plaintiff was properly charged with interest on the amount of the over-payment of the legacies. Besides, it would have been his duty to have exercised this same degree of care and diligence to have kept the overplus at interest. His act which occasioned the loss, put it out of his power to exercise this degree of care and diligence in placing the overplus at interest. The same considerations apply in regard to charging him with the premium on the $800 bond. It is contended that the interest on the premium on this bond stands on a different basis from the interest on the premiums on the other bonds. He claims that he deposited that bond in the bank where he kept his individual deposits to create a fund upon which to draw to pay the expenses of settling the estate. The commissioner has not found that the creation of such a fund was necessary or proper in the settlement of this estate. He would be bound to the same measure of care and diligence in regard to this as to all other matters in the settlement of the estate. When asking to have the decision of the commissioner and County Court reversed in regard to this item, it is for him to establish that the creation of such a fund was required. On other grounds the decision of the commissioner and of the County Court in this particular can be upheld. He was called upon by the Probate Court to account for this bond, and

Spaulding *v.* Wakefield's Estate.

was there charged with the premium and interest thereon. The case was brought to the County Court, and he was again called upon to account for the same. Knowing just what he had done with the bond, and having the means, by applying to the bank to ascertain, and inform the commissioner just what he received for the bond, and what interest, if any had been allowed him for the money derived from the sale, he has wholly failed to inform the commissioner in these respects, as well as whether the bond was in fact sold by the bank, and whether, if sold, the avails were mingled with his individual funds on deposit in the bank. His so-called accounting is substantial silence on the vital matters involved. On these facts he was entitled to no leniency at the hands of the court. In such case it is usual to charge the trustee with the highest market value of the fund, and the highest rate of interest allowable by the law of the land, and to disallow all claims for services for care of the property not accounted for. *Farwell* v. *Steen*, 46 Vt. 678. If any other rule should be adopted, all an administrator, or executor, or other trustee, would have to do to cover up his gains on the trust property, would be to remain silent when called upon to render an account of his stewardship. There was no error in charging him interest on this item. The charge for personal services on the farm after it had passed into the possession and control of the life-tenant, Chandler Wakefield, were properly disallowed. They were not performed for the benefit of the estate, but for the benefit of the life-tenant, who should pay for them, if any one.

The judgment of the County Court is affirmed.