## SARAH A. E. WALTON, ADMX. OF JOHN WALTON'S ESTATE,

v.

## ESTATE OF ELECTA HALL.

MAY TERM, 1894.

*Probate of will in another state when testator is resident of Vermont. Effect of such judgment. Executor de son tort. Interest. General assumpsit. Funeral expenses.*

1. If a resident of Vermont dies testate, leaving property in another state upon which his will can act, such will may be probated in that state, although never offered for probate in the state of Vermont.

2.  When duly admitted to probate in that state, full force and effect will be given by the courts of Vermont to the judgment of probate.

3.  The administration under such probate in that state is, however, only ancillary, and does not draw to it any assets not having their situs therein.

4.  So where a resident of Vermont, having property situated in the state of Illinois, died testate, *held*, that his will might be probated in the state of Illinois without being offered for probate in the state of. Vermont; that the property of the testator situated in the state of Illinois would be disposed of under the terms of ·the will, but that the property of the testator situated in the state of Vermont must be disposed of as though the testator had died intestate.

5.  A debt due the testator from a resident of the state of Illinois would have its situs in that state and be disposed of under the will.

6.  Where the widow of the testator made an agreement with the residuary legatee, resident in Illinois, by the terms of which the widow released all her claims against the estate and received in consideration therefor certain property belonging to the estate, the agreement will be enforced by the courts of Vermont as to all such property of the estate as had its situs in the state of Illinois; but as to such property as had its situs in the state of Vermont, the widow must account to the estate of the testator.

7.  The testator died in June, 1877, and the agreement between the widow and the Illinois legatee was made December 12, 1877. Administration in Vermont was first taken out upon the estate of the testator in 1885. *Held*, that, as against a claim by the administrator of the testator against the estate of the widow for property belonging to the estate of the testator, the widow could not offset her claim for support or her interest in the estate, for by intermeddling in the settlement of the estate she had become an executor *de son tort* and must account to the estate for the full amount of property received.

8.  She should also be charged with interest at the highest legal rate ; that is, six per cent annually.

9.  The action being general assumpsit, the widow could be charged only with money belonging to the estate of the testator, or with property which she had subsequently converted into money.

10.    She cannot be allowed for what she paid out for the testator's funeral expenses and grave stones.

This was an appeal from the judgment of the probate court for the district of Randolph, accepting the report of commissioners upon the estate of Electa Hall, disallowing the claim of the plaintiff.    Heard upon the report of a referee at the June term, 1893, Orange county, THOMPSON, J., presiding.    Judgment *pro forma* for the plaintiff to recover one thousand five hundred forty-nine dollars and twenty-eight cents and costs.    The defendant excepts.

John Walton resided in Waitsfield, Vt., up to 1870.    At that time he sold out his Waitsfield property and went to Illinois and California, returning to Vermont the latter part of 1872.    Before returning and on October 1, 1872, being then a resident of Illinois, he made his last will and testament.    He continued to reside for some time in Vermont, and then returned to Illinois, where he resided until 1876, when he again came east, and on September 28, 1876, was married to Electa Mosher, with whom he continued to reside until the time of his death, June 1, 1877.

John Walton left surviving three children, a son residing in California, Mrs. Foster, residing in Illinois, and Sarah A. E. Walton, the administratrix of John Walton's estate, residing in Vermont.    By his said will he made Mrs. Foster sole residuary legatee.    Nothing was left to Sarah A. E. Walton for the alleged reason that she had already received her full share of the property.    Ezra M. Prince of Illinois was named as executor of the will.    The will was probated in Illinois August 2 and 6, 1877, the executor qualified and the estate in Illinois was settled under the will.    It never was offered for probate in Vermont for the apparent reason that it was attested by only two witnesses.

Electa Walton continued the widow of John Walton until January 11, 1882, when she married John L. Hall.    She

continued to reside with him until February 22, 1885, when she deceased, leaving a will by which the defendant, Skinner, was made executor.

Nothing was done in respect to the settlement of the estate of John Walton in Vermont until November 4, 1885, when Sarah A. E. Walton was appointed administratrix upon his estate. As such administratrix she presented a claim against the estate of Electa Hall for certain money and property alleged to have been received by her in her lifetime belonging to the estate of John Walton. This claim was disallowed by the commissioners upon her estate, and from that disallowance an appeal was taken. In the county court a declaration in general assumpsit was filed and it is under this declaration that the plaintiff seeks to recover.

December 12, 1877, an agreement was made between Mrs. Foster and Electa Walton by which the latter released all claims which she might have against the estate of John Walton as his widow, in consideration of receiving certain personal property which was then passed over to her.

Among this personal property was a note against Ira Richardson, a resident of Vermont, and two notes, one against Dr. Dunn and one against John Bender, both residents of Illinois.

After his marriage with Electa, John Walton resided upon her farm. While there resident he purchased a stove and placed the same in her house for use therein, where it was at the time of his death. This stove Mrs. Hall subsequently sold for the sum of twenty-five dollars. The referee found that at the time of John Walton's death it was fairly worth thirty-five dollars.

John Walton also bought various articles of furniture, among others a sink, which was brought into and placed in the house of Electa Walton. He also bought certain sugar utensils which were intended for use and were used on her farm by him in the management of the farm. At the death

of John Walton this sink and these sugar tools remained in the possession of his widow, in whose possession they still were save for their natural depreciation, at the time of her death.

John Walton also bought and kept upon the farm of Electa a cow. This cow was sold the day of his death for the sum of thirty-seven dollars and fifty cents. It did not appear by whose direction the cow was sold. The purchase price was paid to his widow, Electa, and was by her accounted for in the settlement with Mrs. Foster, as so much money belonging to his estate.

Electa Walton paid the funeral expenses and the cost of the grave stones for John Walton and was allowed sixty dollars therefor in her settlement with Mrs. Foster.

*Charles P. Tarbell* and *D. C. Dennison & Son* for the defendant.

The settlement between Mrs. Foster, the residuary legatee under the will of John Walton, and his widow was a legal one and should be upheld by this court. *Taylor* v. *Phillips*, 30 Vt. 238; *Babbit and wife* v. *Bowen et al.*, 32 Vt. 437; *Reed* v. *Reed*, 56 Vt. 492; 7 Gen. Dig. U. S., p. 959, s. 51; R. L., s. 2064.

The debts due from residents in Illinois had their situs there. *Abbott* v. *Coburn*, 28 Vt. 663; *Bullock* v. *Rogers*, 16 Vt. 294; *Manning* v. *Leighton*, 65 Vt. 84, 99.

*Roswell Farnham* for the plaintiff.

Since the will of John Walton was not probated in Vermont it has no force here, and it was error to admit the certified copy of the probate in Illinois as evidence here. *Ives* v. *Allyn*, 12 Vt. 598-593; *Dublin* v. *Chadbourne*, 16 Mass. 442; *Kerr, Appellant,* v. *The Devisees of A. Moon, Respondents*, 9 Wheat. 595.

The administration in Illinois was only ancillary, and certainly could not act upon any property situated in the state of Vermont.    Redf. Wills, part 2, p. 12; Rorer, Interstate Law, 248; *Porter* v. *Heydock*, 8 Vt. 374; *Prob. Court* v. *Kimball*, 42 Vt. 320; *Fay* v. *Haven*, 3 Met. 109, 114; *Stevens* v. *Gaylord*, 11 Mass. 256; *Dawes* v. *Boylston*, 9 Mass. 337.

ROWELL, J.    John Walton died on June 1, 1877, domiciled in this State, leaving a will made when he was domiciled in Illinois.    He owned real estate in Illinois at the time of his death, and notes against persons residing there.    The will was never probated in this State; but the referee finds that it was "duly executed, proved, and admitted to probate under the laws of Illinois," and an executor was appointed there.    This is equivalent to finding that the court that probated it had jurisdiction in the premises.

The will purports to dispose of all the testator's property; and it makes Mrs. Foster, one of his daughters, resident in Illinois, residuary legatee, and expressly gives nothing to the plaintiff, his other daughter, resident here.    Inasmuch as there was property in Illinois on which the will was to be operative, the proper probate court of that State obviously had jurisdiction to probate it, notwithstanding the testator was domiciled here at the time of his death.    This necessarily results from the independent character of our state governments.    Resort must be had to the laws of the state to protect and to secure property within it.    Therefore, states take jurisdiction of the estates of deceased persons situate and found therein, for the benefit of those entitled thereto; and by comity they will sometimes execute the law of the domicile of the decedent instead of their own law, as far as the descent and distribution of personal property are concerned.    But this is a mere matter of comity, and is done or not according to the will of the sovereign.    I Am. Law of

Admr. s. 157; *Wells* v. *Wells*, 35 Miss. 638; *Still* v. *Woodville*, 38 Miss. 646; *Beers* v. *Shannon*, 73 N. Y. 292; Story, Confl. Laws, 543 (8th Ed.), note (a) ; Rorer, Interstate Law, 4.

The will having been legally probated in Illinois, the record of that judicial proceeding, duly authenticated, is made by the Federal Constitution and statutes, admissible in evidence in any other court within the United States, and given the same faith and credit in every such court as it has by law and usage in the courts of Illinois. Constitution, Art. 4, s. 1; Revised Statutes, s. 905; *Ives* v. *Heirs of Salisbury*, 56 Vt. 565. What was offered as a certified copy of the record of the will and the foreign probate thereof was properly admitted by the referee, for the only objection thereto was that the will had never been probated in Vermont, which was not a valid objection, as we have just seen.

But the administration in Illinois was ancilary, and cannot be allowed to draw to its jurisdiction assets situate here. Full faith and credit is given to the probate in that State when it is permitted to make the will effective to pass property having its situs there. I Am. Law of Adm. s. 226; I Redf. Wills, 21; Note to *Brown* v. *Johnson*, 73 Am. Dec. 54; *Olney* v. *Angell*, 5 R. I. 198; 73 Am. Dec. 62. We have no statute allowing that probate to make the will effective to pass property having its situs here ; but on the contrary our statute provides that no will shall pass either real or personal estate unless it is proved and allowed in the probate court or on appeal in the County or Supreme Court. R. L. 2049. This, of course, refers to property located here. It follows, therefore, the will not having been proved and allowed here, that it cannot pass property located here. As to all such property, the case must be decided the same as though there was no will ; but as to property within the jurisdiction of Illinois, the will must be given effect to pass it.

Administration on John Walton's estate was first granted in this State on November 4, 1885, when the plaintiff was appointed administratrix, no notice being taken of the will. On December 12, 1877, Mrs. Foster, the residuary legatee, and Electa Walton, the widow of John Walton, with the approval of the executor, who resided in Illinois, made a settlement, whereby the widow received of said executor at the hand of Mrs. Foster, certain property belonging to the estate, in full of all allowances out of and claims against the same. Among this property were two notes against persons residing in Illinois, on which the widow subsequently received the money through the executor and Mrs. Foster. There was also a certain sum of money that the widow had theretofore, and after the death of her husband, received on a note that the executor owed the estate. All this money is now sought to be recovered against the widow's estate ; but it is obvious that it cannot be. The situs of the debts evidenced by those notes was in Illinois, where the debtors resided. The notes, therefore, were assets in that jurisdiction and passed by the will, and so it was competent for those parties to deal with them as they did, and thereby the widow got good title thereto and to the avails thereof as against the plaintiff.

The widow never had the manual possession of the note against William J. Walton, who lived in California, and never received anything thereon, but it is in the hands of Mrs. Foster as residuary legatee. It would seem, therefore, that no recovery could be had therefor in any form of action, but certainly none can be had in general assumpsit, which is the only declaration filed in the case.

Said settlement also covered assets that had their situs in this state ; but as to those it can have no effect, for the reasons already stated. Among those assets was a note against Richardson, who resided here, which was paid to the widow, and for which her estate must account. The cow was sold

the day Walton died, and Mrs. Walton received the money therefor. It does not appear that he authorized the sale, nor whether it was made before or after his death. This transaction, as reported, did not create a debt from her to him, as claimed, but the money in her hands belonged to his estate, and must be accounted for. The money received for the stove that she sold must also be accounted for.

No recovery can be had in general assumpsit for the sink, sugar utensils, and tools, mentioned in the report, for the widow never sold any of them. Beyond the items we have considered, no recovery is now sought.

The defendant claims to be allowed what the widow paid out for her husband's funeral expenses and grave stones, but *Shaw* v. *Hallihan and Wife*, 46 Vt. 389, is against it.

The defendant also claims that as the widow was entitled to a reasonable allowance out of the estate for her maintenance during its settlement, and to not less than one-third of the personal property not lawfully disposed of by the will, after payment of the debts, funeral charges, and expenses of administration, no recovery can be had, for that her maintenance and thirds amount to much more than the money received by her as aforesaid. Concerning the maintenance, there is no finding and no adequate data for us to act upon, even if the claim is well founded. But it is considered that by intermeddling with the estate as she did, the widow became executrix in her own wrong and liable as such, and that her representative cannot defend on the ground of her rights in the estate. *Hawkins* v. *Johnson*, 4 Blackf. (Ind.) 21; Schouler's Exrs. and Admrs. s. 186. It was formerly held with great strictness that no one could intermeddle in the least with the estate of a deceased person, not even to the milking of a cow, without making themselves liable as executor *de son tort*. But while this strictness has been much relaxed in modern times, the rules against such intermeddling are still regarded as important, as the time that elapses

before the grant of administration affords opportunities of which evil disposed or intrusive and officious persons should not be allowed to take advantage by interfering with the administration of the person who may thereafter be appointed.

The widow should have taken her rights in due course of administration, and cannot be allowed to take them by her undue course. Nor can the amount of her thirds be ascertained until the estate is settled, ready for distribution, if there is anything to distribute, as there may not be when the debts that are allowed and the expenses of administration are paid.

In respect to interest, if the widow had been the legal executrix or administratrix, and used this money as her own, she would have been charged with the highest legal rate of interest. *Spaulding* v. *Wakefield's Est.*, 53 Vt. 660; *McCloskey* v. *Gleason*, 56 Vt. 264. Her estate should stand no better in this case than it would have stood in that; therefore the defendant is charged with annual interest on the several sums for which recovery is had from the time the widow received the same respectively. Under the statute, had she been sued thereon, she would have been liable for double damages. R. L., 2159.

*Judgment reversed and judgment for the plaintiff for five hundred thirty dollars and thirty-two cents damages as of May 8, 1894, to be certified to the probate court.*