## IN RE JOYSLIN'S ESTATE.

### October Term, 1902.

Present: ROWELL, C. J., TYLER, MUNSON, START, STAFFORD, and HASELTON, JJ.

Opinion filed November 30, 1903.

*Inheritance Tax—Nature of—Subject of—Decedent's Credits —Situs of—No. 46, Acts 1896.*

Debts due a deceased person from nonresidents of Vermont should not be included in fixing the amount of estate subject to the collateral inheritance tax imposed by No. 46, Acts 1896.

The collateral inheritance tax imposed by No. 46, Acts 1896, is a tax upon the right to succeed to estate left vacant by death.

Debts due resident decedents from nonresident debtors have their situs in the place where the debtor resides, pass by the law of that place, and are not subject to our law.

APPEAL from a decree of the Probate Court adjudging the entire estate of Clara E. Joyslin subject to the collateral inheritance tax imposed by No. 46, Acts 1896. Heard on an agreed statement, at the December Term, 1901, Windsor County, *Stafford,* J., presiding. Judgment *pro forma* that the entire estate is subject to said tax, and that said estate should pay to the State of Vermont, as such tax, the sum of four hundred thirty-nine dollars and thirty-nine cents. The estate excepted.

Said Clara E. Joyslin, at the time of her death, lived at Rochester, Vt. She died testate about March 23, 1901. Her will was duly established before the Probate Court within and for the district of Hartford in this State, and an administrator with the will annexed appointed by said court. The will was never proved, nor letters of administration granted thereon, in any other state.

The following is quoted from said agreed statement: "At the decease of the testatrix she owned in her own name two notes for four hundred dollars each, signed by James and Nancy McNeil, residents of the State of Illinois, and secured by mortgages on real property in that state. Also a note for four hundred and fifty dollars signed by one George W. West, a resident of Illinois, and secured by a mortgage of real property situated in that state. This last named note and mortgage were taken in the name of George W. Benedict of Geneseo, in the State of Illinois, but for her sole use and benefit. At her decease the testatrix had a deposit amounting to forty-four dollars and seventy-five cents in the Farmer's National Bank of said Geneseo, for which a certificate of deposit had been issued. The proceeds of said notes and certificate of deposit have been remitted to the administrator in this state; and out of such proceeds he has already paid legacies under said will to Carrie A. Hayward and Julia S. Duffer, both residents of Illinois, of five hundred dollars each, less fifty dollars retained by him to pay the tax in question upon said legacies, should the court so determine. By the terms of said will these legacies were not required to be paid out of any specified fund."

It further appears from said agreed statement that at the time of her death the testatrix also owned the following property: One-half of a bond for two thousand dollars, signed

by residents of Iowa and secured by a mortgage on real property in that state; the sum of five hundred thirty-seven dollars and twelve cents on deposit in the German's Savings Bank of Davenport, Iowa. All of said notes, bonds, and deposits were "physically absent from the State of Vermont" at the death of the testatrix.

The estate, after the payment of debts and expenses of administration, amounted to the sum of eight thousand seven hundred eighty dollars and thirty-six cents, and was all "devised and bequeathed to persons not related to the testatrix and to persons only collaterally related to her."

*Marvelle C. Webber* for the estate.

The right of the state to impose a succession tax is based upon its dominion over the property within its bounds. *Matter of James,* 144 N. Y. 6; *Frothingham* v. *Shaw,* 175 Mass. 59; *Callahan* v. *Woodbridge,* 171 Mass. 595.

The debts in question were not "within the jurisdiction of this state." *Abbott* v. *Coburn,* 28 Vt. 664; *Bullock* v. *Rogers,* 16 Vt. 294; *Vaughn* v. *Barrett,* 5 Vt. 333; *Purple* v. *Whitehead,* 49 Vt. 187.

*J. E. Cushman,* Commissioner of State Taxes, for the State.

No. 46, Acts 1896, is copied from the law of Massachusetts. The courts of that state hold that personal property for the purpose of this tax has its situs at the domicile of the deceased. *Frothingham* v. *Shaw,* 175 Mass. 59. To the same effect is the case of State Tax on Foreign-Held Bonds, 15 Wall, 300, 324; *In Re Dingman,* 66 App. Div. 228; *Bonapart* v. *Tax Court,* 104 U. S. 592; *McKeen* v. *County,* 49 Penn. St. 519; *In Re Henry Bronson,* 150 N. Y. 1; *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *State* v. *Bank,* 74 Vt. 246.

The tax in question is not a tax on property, but is a:
succession tax. *Minot* v. *Winthrop,* 162 Mass. 1,13; *Mary-
land* v. *Dalrymple,* 3 L. R. A. 373; *Walker* v. *People,* 192 Ill..
106; *Plummer* v. *Coler,* 178 U. S. 115.

STAFFORD, J. The case calls for a construction of No..
46, Acts of 1896, providing for a tax upon collateral inher--
itances.

The decedent died domiciled in this state and leaving a:
will, which has been duly established, by the provisions of
which the whole estate passes collaterally. The question is,
whether debts that were due to her from non-residents of
Vermont are to be included in fixing the amount of the estate
subject to the tax.

The act applies in terms to "all property within the ju-
risdiction of this state . . .whether tangible or intangible,,
which shall pass by will or by the intestate laws of this state."
What is meant by the phrase, "within the jurisdiction of this
state?" Must it not mean within its probate jurisdiction?
If so, these debts were not within the jurisdiction, for imme-
diately upon the death of the creditor they became *bona no-
tabilia,* or assets in the jurisdiction where the debtor resided.
Nothing is better settled in this state. *Vaughn* v. *Barrett,* 5
Vt. 333; *Heirs of Porter* v. *Heydock,* 6 Vt. 374; *Bullock's
Admr.* v. *Rogers,* 16 Vt. 294; *Abbott* v. *Coburn,* 28 Vt. 664;
*Purple* v. *Whithed,* 49 Vt. 187; *Walton* v. *Hall,* 66 Vt. 455,
29 Atl. 803.

That the act applies to estates both real and personal of
non residents is apparent from the first section, which declares
that it shall apply to all property "whether tangible or in-
tangible," and "whether belonging to inhabitants of this
state or not" provided it be within the jurisdiction of the
state and passing by will or the intestate laws thereof. The

same thing also appears from section 10, which provides that the court of probate having *either principal or ancilliary* jurisdiction of the settlement of the estate of the decedent shall have jurisdiction to hear and determine all questions in relation to said tax that may arise affecting any *devise, legacy .or inheritance* under this act." Suppose, then, a non-resident die leaving debts due to him from residents of this state. Such have always been held subject to our probate jurisdiction and are evidently within the purview of the act. How, then, can we refuse to say that debts due to resident decedents from non-resident debtors are beyond our jurisdiction?

And what is meant by the phrase, "pass by will or by the intestate laws of this state?" Does it not mean, pass by virtue and force of the law of this state governing testate or intestate succession? If so, this portion of the estate did not pass by force of our law at all, for that law had no force in the domicile of the debtors. It passed by force and virtue of the law of those jurisdictions. If they recognized our law as the rule to be followed in distributing the personal estate, just as they would have recognized the law of the place where a contract was made as the law of the contract, that did not make it that the property passed by force of the law of this state, but only that it passed in the same manner as it would have passed by our law. It so happens that the states where these debtors resided do recognize the law of the decedent's domicile as the rule governing the descent of personal estate; but if they had resided elsewhere the rule might have been different. In Mississippi, for example, even personal estate, there situate, descends according to the statutes of Mississippi .although the power was domiciled elsewhere. Hence it would be necessary to inquire in each instance whether the law of the *situs* permitted the estate to pass according to the law of

the domicile, which is enough to show that it really passes by force and virtue of the law of the *situs*. If we should refuse to inquire whether the law of the *situs* did permit it, and should insist upon holding that the law of the domicile governs, we should be giving our law force beyond its territory and should be exacting a tax upon estate supposed to be passing to collaterals, when perhaps by force of the law of the *situs* it was prevented from passing to collaterals at all. Moreover, by our decisions, a foreign administrator has no authority. He cannot release and discharge a debt here so as to bind the resident administrator. *Vaughn* v. *Barret,* 5 Vt. 333. His authority depends upon the law of the state where the property to be administered is located, which may or may not be liberal enough to recognize it, which may require him to be appointed there, and may even forbid the appointment of a non-resident. If we should hold an administrator appointed here responsible for the tax upon personal property situated abroad, we should be treating him as clothed with authority which he might not possess, and which, if he did possess it, he would possess by virtue of the law of the other jurisdiction,—not by virtue of our law.

All agree that this is a tax upon the right to succeed to estate left vacant by death and is imposed by the sovereignty bestowing and regulating that right, in virtue of its authority to enforce contribution from those who become invested with property by its grace and power. The hand that passes the estate from one generation to another retains a portion as a sort of toll for the service. Which sovereignty is that? Clearly the one which has the right to say who shall succeed. And that, by the decisions of this court, is the sovereignty in which the assets are located, which in the case of debts is the place where the debtor resides. We have maintained the right

·of the ancillary jurisdiction, not merely to administer for the :protection of creditors, but even to proceed to final decree and ,distribution, although as matter of convenience and comity, the proceeds may be remitted to the domicile; and we have ·explicitly held that the law governing the distribution is the law of the place of administration, even when it proceeds, as it does almost universally as to personal estate, in accordance with the law of the domicile. *Heirs of Porter* v. *Heydock,* 6 Vt. 374.

Equally pronounced is *Walton* v. *Hall,* 66 Vt. 455. John Walton died domiciled in Vermont, leaving a will made in Illinois while he was domiciled there, and leaving property both real and personal in each state. The will was probated in Illinois, but not in Vermont. A legatee, with the approval ·of the Illinois executor, made a settlement with the widow in Vermont, by the terms of which, portions of the estate in both jurisdictions were attempted to be disposed of. Later, an administrator was appointed in Vermont, no notice being taken of the will, and the validity of the settlement as to the different portions of the estate came in question. It was held that the settlement was effective as to the estate situated in Illinois, and of no effect as to the estate situated here. A part ·of the estate so held to have its *situs* in Illinois consisted of ·debts due to the decedent from residents of Illinois; and a part so held to have its *situs* in Vermont consisted of debts due to the decedent from residents of this state. Thus was the line sharply and positively drawn between the jurisdic- tions, and the right of the foreign probate court unequivocally :recognized. We quote briefly from the opinion by ROWELL, J.: "The *situs* of the debts due evidenced by those notes was :in Illinois where the debtors resided. The notes therefore were assets in that jurisdiction and passed by the will and so

it was competent for the parties to deal with them as they did." (P. 462.). "Inasmuch as there was property in Illinois on which the will was to be operative, the proper probate court of that state obviously had jurisdiction to probate it, notwithstanding the testator was domiciled here at the time of his death. This necessarily results from the independent character of our state governments. Resort must be had to the laws of the state to protect and to secure property within it. Therefore, states take jurisdiction of the estates of deceased persons situate and found therein for the benefit of those entitled thereto; and by comity they will sometimes execute the law of the domicile of the decedent, instead of their own law, as far as the descent and distribution of personal property are concerned. But this is a mere matter of comity, and is done or not according to the will of the sovereign."

We are aware that the courts of some other states have reached an opposite conclusion. *Frothingham* v. *Shaw,* 175 Mass. 59; *Maryland* v. *Dalrymple,* 3 L. R. 372, 17 Atl. 82; *Re Est. of Swift,* 18 L. R. A. 709, and note. But they have also held otherwise touching the authority of the foreign administrator and the relation of the ancillary administration to that of the domicile. We feel bound to follow our own decisions.

There is no occasion to question *Bullock* v. *Guilford,* 59 Vt. 517, 9 Atl. 360, for while the creditor lives there is no doubt that debts owing to him attend his person and are taxable against him where he resides.

*The pro forma judgment of the county court is reversed and judgment is entered that the estate pay to the State of Vermont as the amount of the tax two hundred and sixteen*

*dollars and eleven cents.; this judgment to be certified to the probate court.*