In the Matter of the Transfer Tax upon the Estate of POMPEO MARESI, Deceased.

GIOVANNA P. MARESI and Others, as Executors, etc., of POMPEO MARESI, Deceased, Appellants; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

*Transfer tax on a fund given to a widow for life, subject to certain annuities — a bond of the testator secured by a mortgage and interest not due will not be deducted — when taxes assessed, but not levied, will not be — the costs of an action to construe the will will be.*

Where a testator gives his widow a life estate in his personal property, subject to an annuity of $200 to be paid to his sister for life, and to the payment of $1.25 a day and certain house rents to his brother for life, it is proper in calculating, for the purposes of the transfer tax, the present value of the widow's life estate, to deduct from the net value of the personal property the present value of the annuities instead of deducting therefrom the actual amount of principal necessary to produce the annuities at the rate of five per cent per annum.

The fact that the widow will not receive the income on so much of the funds as may be necessary to produce the annuities until the annuitants die, does not render the above-mentioned method of computing the value of her life estate improper, as under the provisions of section 230 of the Tax Law (Laws of 1896, chap. 908, as amd. by Laws of 1901, chap. 173) the widow's prospective interest in the difference is not only presently taxable, but taxable as though presently received.

In determining the amount of the testator's personal estate, the beneficiaries are not entitled to have deducted therefrom the principal of a bond executed by the testator and secured by a mortgage upon real estate owned by him, which was not due at the time of the testator's death, or interest thereon which had then accrued but was not yet due.

Where it appears that the testator died January 30, 1901, taxes for the year 1900 assessed against him in the city of New York are not deductible from the value of his personal estate.

The costs and expenses of an action, instituted by the executors of the testator to obtain a judicial construction of the will and instructions as to the distribution of the estate, which action was brought in good faith and was fully justified by the result, may be deducted from the amount of the personal estate as a necessary expense of administration.

APPEAL by Giovanna P. Maresi and others, as executors, etc., of Pompeo Maresi, deceased, from that portion of an order of the Surrogate's Court of the county of Kings, entered in said Surrogate's Court on the 30th day of September, 1901, which provides

that the proceeding be remitted to the appraiser appointed to ascertain the amount of the transfer tax, to take testimony and report as to when the interest on a certain bond and mortgage amounting to $562.50 was due, and that he amend his report accordingly, and which confirms such report in all other respects.

*William A. W. Stewart* and *Edward W. Sheldon* [*George L. Shearer* with them on the brief], for the appellants.

*H. Louis Jacobson* and *W. E. Kisselburgh, Jr.*, for the respondent.

HIRSCHBERG, J.:

The testator, Pompeo Maresi, died on the 30th day of January, 1900, possessed of considerable real and personal property. This appeal is taken in order to review the decision of the surrogate of Kings county rendered in transfer tax proceedings, and the appellants assign several grounds of alleged error. In an action heretofore brought by the executors to procure a judicial construction of the will, it was determined that certain provisions were invalid, but it is sufficient for the purpose of this appeal to note that a valid trust in the residuary personal estate is limited on the life of the testator's widow, Giovanna P. Maresi, subject to an annuity of $200 a year, to be paid to his sister Adelaide Borlinghi for life, and to the payment of $1.25 a day and certain house rent to and for his brother Francesco Maresi for life.

The appellants claim that the present value of the widow's life estate was incorrectly measured. The net residuary personal estate as ascertained on the appraisal amounts to $103,358.19. The widow is forty-nine years of age; and Adelaide Borlinghi and Francesco Maresi are fifty-eight years and sixty-six years of age respectively. In the requisition made by the learned surrogate upon the State Superintendent of Insurance to ascertain the present values of the life interests in accordance with the requirements of sections 230 and 232 of the Tax Law (Laws of 1896, chap. 908, as amd.), the determination of the superintendent was requested upon each of the annuities separately, and upon so much of the $103,358.19 as would remain after deducting therefrom the present values of the annuities as thus ascertained, such remainder to represent the amount

on which the present value of the widow's life estate should be computed. The appellants contend that instead of deducting the taxable values of the annuities from the $103,358.19, there should have been deducted the actual amount of principal necessary to produce the annuities at the rate of five per cent per annum. I think this contention unwarranted by the provisions of section 230 of the Tax Law (*supra*) and that the method adopted was substantially correct. The present values of the annuities were treated for the purposes of taxation as specific legacies bequeathed to the annuitants and deducted from the residuary personal estate on the theory that the widow's life interest is limited on the remainder only. In effect her interest is ascertained to be the present value of a life estate in the entire fund, less the present values of the annuities which are charged upon such fund, and this is deemed to be within the meaning and intent of the law.

It may be true, as stated by the learned counsel for the appellants, that by the method adopted in the court below it is assumed that the widow will receive from now until her death the income on the balance of the fund after deducting only the present values of the annuities, when in fact she will not receive the income on so much of the fund as may be necessary to produce such annuities until the annuitants shall die respectively ; but I think that under the terms of the statute the widow's prospective interest in the difference is not only presently taxable, but taxable as though presently received. This result is deduced from that portion of section 230 (*supra*), as amended by chapter 173 of the Laws of 1901, which provides that " Where any property shall, after the passage of this act, be transferred subject to any charge, estate or interest, determinable by the death of any person, or at any period ascertainable only by reference to death, *the increase of benefit* accruing to any person or corporation upon the extinction or determination of such charge, estate or interest shall be deemed *a transfer of property taxable* under the provisions of this act in the same manner *as though the person* or corporation beneficially entitled thereto *had then acquired* such *increase or benefit* from the person from whom the title to their respective estates or interests is derived."

The appellants further contend that the principal of a bond of $50,000 not due at the death of the deceased, and the interest

thereon then accrued, but not yet due, and which bond was given by the deceased and was secured by mortgage upon real estate owned by him, should have been deducted from the amount of the personal estate before estimating the taxable value of the bequests. The contrary view would seem to accord with the adjudications. (*Matter of Livingston*, 1 App. Div. 568; *Matter of Sutton*, 3 id. 208; *Matter of Offerman*, 25 id. 94; *Matter of Murphy*, 32 id. 627; affd., 157 N. Y. 679.)

So, too, the taxes for the year 1900 were not deductible. It is true that in *Matter of Babcock* (115 N. Y. 450) Chief Judge RUGER said (p. 458) " that assessments, so far completed that the name of the person named as owner cannot be changed or altered by the assessment officers before the death of such person, shall be payable from his estate in due course of administration," and this case is cited by the appellants as authority for the proposition that the taxes for the year 1900, on the second Monday of January, under section 892 of the charter of Greater New York (Laws of 1897, chap. 378), on the completion of the assessment books and their opening for public examination and correction, became not merely a charge against the testator's real estate, but a debt of the decedent to be deducted from the personal estate for the purposes of this proceeding. In that case the doctrine laid down by GROVER, J., in *Rundell* v. *Lakey* (40 N. Y. 513, 517), was cited with approval to the effect that the time when the owners of real estate became liable for taxes " was the time of the completion and delivery of the roll, although the amount of the tax was not ascertained and fixed for some two months afterwards, yet the foundation of the liability was complete." The first case cited presented a question as between life tenants and remaindermen; the second case was one as between grantors and grantees. In the latter class of cases this court held in *Burr* v. *Palmer* (53 App. Div. 358) that a tax in the greater city of New York becomes a lien only when it has been completed and carried out on the assessment roll, and I am unable to see how, if a bond of the deceased of fixed amount but not due cannot be regarded as a debt within the provisions of the Tax Law, a tax neither assessed nor a lien nor payable, can be so regarded.

The learned surrogate refused to allow a deduction for the costs and expenses of the action to construe the will, viz., $3,470.98.

This determination was based on the case of *Matter of Westurn* (152 N. Y. 93), wherein the Court of Appeals held that the costs and expenses incurred by the heirs at law and next of kin in a successful contest attacking the validity of the will could not be deducted from the taxable value of the estate. The court said (p. 102): "The fact that the appellants were put to expense in asserting their rights and were embroiled in expensive litigation to obtain them, was their misfortune. It did not diminish the value of the interests which devolved upon them on Westurn's death. It was a loss, but a loss to *their* general estate. It did not prevent them receiving the whole interest transmitted to them. The fact that the court charged certain costs and allowances in their favor upon the estate did not change the situation. It was practically a charge upon *their own property* for the benefit of *their attorneys*." Since the decision of the learned surrogate in the case at bar the Court of Appeals has held, however, in the case of *Matter of Gihon* (169 N. Y. 443) that the commissions and disbursements of a temporary administrator appointed in proceedings to contest a will are properly deductible on the ground that they are an expense of administration, and as such are chargeable to the estate and not to the legatees or devisees. The court said, per CULLEN, J. (p. 445): "The transfer tax imposed by the laws of this State is a tax, not on the property of the estate, but on the succession by the legatee, devisee, next of kin or heirs at law to the fortune of the deceased. Personal property does not pass directly from the deceased to his legatee or next of kin, but all that such legatee or next of kin takes is what may be coming to him from the estate on its distribution after settlement. The amount represented by the expenditures of the administrator or the expense of administration never passes to the legatee or next of kin, and, therefore, is not subject to the tax. This was the rule held by this court in *Matter of Westurn* (152 N. Y. 93), though the appellant claims that that case is authority for a contrary doctrine. There the will was rejected and the next of kin sought a deduction of the amount expended by them in the contest. It was held that such a deduction was properly refused *on the ground* that these were expenditures *made by the next of kin personally* and not *by the legal representatives* of the deceased in the administration of his estate."

While the precise question now under consideration was not decided in *Matter of Gihon* (*supra*), the deduction there allowed being for the commissions and disbursements of a temporary administrator and not for the costs and expenses of litigation, the reasoning leads to the conclusion that in this case the costs and expenses of the action instituted by the executors should be deducted from the amount of the personal estate as a necessary expense of administration for the purposes of this proceeding. The action was instituted in good faith and was fully justified by the result. The expense was a legitimate outlay incurred, not by the legatees, but by the personal representatives of the estate in order to secure judicial construction of the will and instruction as to the distribution of the estate, and was in every just sense a proper administrative expenditure of funds which do not pass to the legatees either in fact or in theory. The costs and expenses of the action to construe the will are a direct charge upon the estate of the testator incurred by the executors in the due course of administration, and should, therefore, be allowed as a deduction.

It follows that the decree of the surrogate should be modified as herein suggested and the proceedings remitted for disposition accordingly.

All concurred.

Decree of the Surrogate's Court of Kings county modified in accordance with the opinion of HIRSCHBERG, J., and as modified affirmed, with costs.