[S. F. No. 5133.   In Bank.—April 1, 1910.]

In the Matter of the Estate of JOHN F. KENNEDY, Deceased.

ALICE KENNEDY, as Widow and Executrix, Appellant and
Respondent, v. JOHN McDOUGAL, County Treasurer,
Respondent and Appellant.

INHERITANCE TAX—CONSTRUCTION OF STATUTE—PROPERTY "SUBJECT TO
TAX"—DISTINCTION FROM STATUTORY "EXEMPTION."—In determin-
ing the question what property is subject to the inheritance tax
imposed by the act of March 20, 1905, (Stats. 1905, p. 341), as
distinguished from the statutory exemption created thereby, the all-
important section thereof to be considered is section 1, which imposes
the tax and limits it to "property which *shall pass by will or by the
intestate laws of this state*," from a deceased resident of this state,
"*to any person or persons*," etc.  Property not "so passing" is not
"subject to taxation," and no question of "exemption" is involved in
determining that question.

ID.—TITLE VESTED AT DEATH SUBJECT TO BURDEN OF ADMINISTRATION—
POSSIBLE DEFEAT.—The title, deemed in one sense to be vested at
the death of a testator or intestate, is subject to the burdens of
administration not only in the payment of debts and expenses, but
also to the power of the probate court to make an allowance
for the support of the family and to set apart a homestead, which
may defeat a devise or legacy or limit an inheritance.

ID.—POWER OF TESTAMENTARY DISPOSITION NOT PARAMOUNT—SUBJEC-
TION TO POWER OF PROBATE COURT—BENEFICIAL INTEREST LIMITED.
—The power of testamentary disposition of property is not para-
mount, but subordinate to the statutory power conferred upon the
probate court to appropriate the property to a statutory use; and to
the extent to which it is so appropriated, the devisees or legatees
take no beneficial interest.

ID.—TITLE TO HOMESTEAD SET APART—SOURCE NOT WILL, BUT ORDER.—
Where a homestead is set apart by the probate court absolutely, the
title of the one to whom it is set apart is in no way derived from
the will, though she may be named therein as devisee, but comes
wholly from the homestead order.

ID.—SOURCE OF TITLE TO FAMILY ALLOWANCE.—The title to the money
paid for a family allowance comes solely from the order of the
court, and not from the will, to which it may be in direct opposition.

ID.—NATURE OF HOMESTEAD RIGHT.—A homestead right, or a right to
have a homestead, is not a right which vests under the law of suc-
cession.  It is a right bestowed by the beneficence of the law of this
state for the benefit of the family.  Setting apart a probate home-
stead is a part of the proceeding in the probate court, as much so
as the family allowance.

ID.—TITLE UNDER ORDERS NOT DERIVED UNDER "INTESTATE LAWS."—It is equally as clear that the title taken under the orders of the probate court by the widow does not "pass by the intestate laws of this state" as that it does not "pass by will."

ID.—LANGUAGE OF INHERITANCE TAX LAW.—MEANING.—The language of the inheritance tax law, "pass by will or by the intestate laws of this state," means to pass by virtue and force of the law of this state governing testate or intestate succession.

ID.—NATURE OF INHERITANCE TAX.—It is recognized by this court and by the courts generally that an inheritance tax is not a tax on property as such, so as to subject all property owned by the testator or intestate at his death thereto; but that it is in the nature of a tax upon the right of succession or for the privilege of succeeding to property. The design of the act is a tax based on the distribution of the net proceeds of the decedent's property after administration has been had, or on the net successions to the beneficiaries. If no transfer is effected, because it turns out that there is no property to transfer, no tax can be collected. It is only the distributable interest or the right taken by distribution that can be taxed.

ID.—PROPERTY NOT TAXABLE.—Property set apart absolutely as a homestead by the probate court under section 1465 of the Code of Civil Procedure, and moneys paid under order of the probate court under section 1466 of the Code of Civil Procedure, are not taxable to the persons receiving such property or moneys under the Inheritance Tax Act of March 20, 1905.

APPEALS from an order of the Superior Court of the City and County of San Francisco fixing an inheritance tax upon the estate of a deceased person. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Campbell, Metson, Drew, Oatman & McKenzie, for Alice Kennedy, as Widow and Executrix, Appellant and Respondent.

Hartley F. Peart, for John E. McDougal, Treasurer of the City and County of San Francisco, Respondent and Appellant.

ANGELLOTTI, J.—These are separate appeals by the treasurer of the city and county of San Francisco and Alice Kennedy, surviving wife of deceased, from an order fixing the amount of inheritance tax to be paid by Mrs. Kennedy under the provisions of the act of March 20, 1905 (Stats. 1905, p. 341), and directing payment thereof.

Deceased died testate, giving by his will all his property to his wife. The value of all his property was $82,752.50. The debts of deceased and the expenses and charges of administration, exclusive of family allowance, aggregated in amount $9,975.93. Under an order for family allowance duly made in accord with the provisions of section 1466 of the Code of Civil Procedure, there was paid to the widow during administration the sum of four thousand six hundred dollars. Under the provisions of section 1465 of the Code of Civil Procedure, there was also regularly selected, designated, and set apart to her absolutely, by the court in probate as a homestead, certain real property of the deceased of the value of fourteen thousand dollars. In fixing the amount upon which the tax should be calculated the superior court deducted from the whole value of the estate, the debts, expenses, and charges of administration ($9,975.93), and the family allowance paid ($4,600), but refused to deduct the value of the property set apart as a probate homestead, thus leaving $68,176.57, as the amount upon which the tax was to be calculated. The property going to the widow in this case, and the act in terms exempting from the tax in favor of the widow "property of the clear value of ten thousand (10,000) dollars transferred to the widow" of a decedent, the court deducted the further sum of ten thousand dollars, fixing the amount of $58,176.57 as the amount upon which the tax against the widow must be calculated, resulting in a tax of $888.53. The treasurer's claim is that the four thousand six hundred dollars family allowance should have been included in fixing the amount upon which the tax was to be paid, and the widow claims that the value of the property set apart as a homestead should have been excluded.

We are of the opinion that there is no question of "exemption" presented by these appeals, but that the real question is whether the act purports to impose any tax as to property of a decedent disposed of in the course of administration as was this property. The only exemptions provided for by the act are those specified in section 4 thereof, being of property "transferred" for charitable, etc. purposes, "property of the clear value" of certain designated amounts to various classes of relatives of the deceased, and "property of the clear value" of five hundred dollars to more distant relatives and strangers in blood. There is absolutely nothing in the act purporting

to "exempt" even the amount of charges of administration or debts of the deceased from any tax imposed by the act, section 12 relied on as implying such an intent as to debts to our minds implying an entirely different intent.

The all-important section of the act in this controversy is the section imposing the tax, the section declaring the property that shall be subject to the tax. That is section 1. So far as material here, it provides: "All property which shall pass, by will or by the intestate laws of this state, from any person who may die seized or possessed of the same while a resident of this state, . . . to any person or persons, or to any body politic or corporate, in trust or otherwise, . . . shall be and is subject to a tax hereinafter provided for, . . . and such tax shall be and remain a lien upon the property passed or transferred until paid and the person to whom the property passes or is transferred . . . shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed." Section 2 prescribes the rates to be paid by different classes of persons "entitled to any beneficial interest in such property" when the property or interest "so passed or transferred" exceeds in value the exemption specified in section 4 and does not exceed in value twenty-five thousand dollars, while section 3 prescribes the rates for amounts in excess of twenty-five thousand dollars. Section 4 provides for exemptions as already stated. Section 7 makes all taxes "due and payable" at the death of decedent, and provides that they may be paid "within eighteen months" thereafter without any charge for interest. Section 9 provides that any administrator etc. having in charge any legacy or property for distribution "shall deduct the tax therefrom," or if it be not money shall collect the tax from the legatee or person entitled to the property, and that he shall not deliver any specific legacy or property until he shall have collected the tax thereon. Section 12 provides: "Whenever any debts shall be proven against the estate of a decedent after the payment of legacies or distribution of property from which the said tax has been deducted or upon which it has been paid, and a refund is made by the legatee, devisee, heir or next of kin, a proportion of the tax so deducted or paid shall be repaid to him by the executor, administrator or trustee, if the said tax has not been paid to the county treasurer or to the state controller, or by them, if it has been so

paid." Section 28 provides that the words "estate" and "prop-
erty" as used in the act "shall be taken to mean the real and
personal property or interest therein of the testator, intestate
. . . passing or transferred to individual legatees, devisees,
heirs, next of kin, grantees, donees, vendees, or successors."
The act is entitled "An act to establish a tax on gifts, legacies,
inheritances, bequests, devises, successions and transfers, to
provide for its collection, and to direct the disposition of its
proceeds," etc.

Section 1465 of the Code of Civil Procedure provides that
at any time during the administration of the estate subsequent
to the return of the inventory, the court, if no homestead has
already been selected, must select, designate, and set apart and
cause to be recorded, a homestead for the use of the surviving
husband or wife and the minor children, and the effect of an
order under this section setting apart absolutely certain real
property as a homestead is to vest such property in the sur-
viving husband or wife, if there be no minor child, and to
relieve it from administration as a part of the estate. (Code
Civ. Proc., sec. 1468; *Estate of Moore,* 96 Cal. 531, [31 Pac.
584].) Section 1466 of the Code of Civil Procedure provides
that if the property set apart is insufficient for the support of
the widow and children, or either, the court or judge in pro-
bate must make such reasonable allowance out of the estate as
shall be necessary for the maintenance of the family according
to their circumstances during the progress of the settlement
of the estate, and by section 1467 of the Code of Civil Pro-
cedure, it is provided that any such allowance must be paid in
preference to all other charges except funeral charges and
expenses of administration.

By its terms the taxing act is limited to such property as
"shall pass, by will or by the intestate laws of this state" from
the deceased to some other person. It must be borne in mind
that we are speaking regardless of other provisions applicable
to grants, etc. made by a deceased in contemplation of death
or intended to take effect in possession or enjoyment after
death, for these provisions can have no application here.

In one sense of the word, all of the property of deceased of
which he died seized did "pass, by will" to his sole devisee at
the moment of his death, that is, she, by reason of the will, at
once became vested with the title to the full property (*Bren-*

*ham* v. *Story,* 39 Cal. 188), but she took under the will "subject to certain burdens, as the payment of the debts of the deceased, and the right of the court to appropriate some portion of the estate for the support of the family of the deceased." (Id., p. 185.) It is thoroughly settled that, as was said in *Sulzberger* v. *Sulzberger,* 50 Cal. 385, "the power of testamentary disposition of property, as conferred and defined by the statute, is not paramount, but is subordinate to the authority conferred upon the probate court to appropriate the property for the support of the family of the testator, and for a homestead for the widow and minor child or children, as well as for the payment of debts." And to the extent that this power is exercised by the probate court in any estate, the devisees and legatees take no beneficial interest at all. Although real property be specifically devised by a will, the probate court may set apart such property as a homestead to the family and thus defeat the devise. (*Sulzberger* v. *Sulzberger,* 50 Cal. 385; *In re Davis,* 69 Cal. 458, [10 Pac. 671]; *Estate of Huelsman,* 127 Cal. 275, [59 Pac. 776]; *Estate of Firth,* 145 Cal. 236, [78 Pac. 643].) Where it is so set apart absolutely as a homestead, the title of the person to whom it is so set apart is in no way derived by will, even though she was the devisee, but comes solely from the homestead order. Of a similar situation it was said in *Estate of Huelsman,* 127 Cal. 275, [59 Pac. 776], "notwithstanding, then, the specific devise of one half of the farm to the widow, her title to all of it is deraigned from the homestead order." Money paid from the funds of the estate by order of the court for the maintenance of the widow and children, if any, is on the same basis. It is paid regardless of and even in opposition to the terms of the will and those receiving it take it not "by will" but solely by reason of the order of the court diverting it from the purposes to which it was appropriated by the will. It is clear, therefore, that the widow did not receive any beneficial interest in the real property set apart as a homestead or in the forty-six hundred dollars paid her as family allowance *by reason of the will.* That she would have received it as sole devisee and legatee had there been no order for homestead or family allowance is absolutely immaterial. The rule applicable is necessarily the same here as it would be if the legatee or devisee were another person. What the widow takes under

such orders of the probate court she does not take by will. It is equally clear that she does not take property so set apart by the probate court "by the intestate laws of this state." The language "pass, by will or by the intestate laws of this state" means to pass by virtue and force of the law of this state governing testate or intestate succession. (*In re Joyslin's Estate,* 76 Vt. 88, [56 Atl. 281].) "The term 'intestate laws' is intended to cover the statute of descents which relates to the descent of real estate, and the statute of distribution which provides for the distribution of the personal property of decedent after the payment of his debts, . . . and after the setting apart to the widow and minor children of the exemptions specified . . . These exempt articles are in no way governed by the statute of distribution." (*Estate of Page,* 39 Misc. 220, [79 N. Y. Supp. 382].) "A homestead right, or a right to have a homestead, is not a right which vests under the law by succession. It is a right bestowed by the beneficence of the law of this state for the benefit of his family. Upon the death of an intestate, his property goes by succession to his heirs, subject to administration. . . . Setting apart a homestead is a part of the probate proceeding, as much as is a family allowance. (*Estate of Moore,* 57 Cal. 442.)

If, then, the widow is liable at all for a tax as to the property set apart as a homestead and the money paid as family allowance it must be upon the theory that within the meaning of the inheritance tax statute such property passed to her as sole devisee and legatee at the moment of the testator's death, and must be regarded as having so passed, although subsequently diverted and removed from administration by the probate court in due course of administration, and thus not constituting any part of the distributable assets of the estate. This theory, however, not only appears to us to be inconsistent with the provisions of the tax act but is absolutely opposed to the decisions rendered by the courts of other states in cases involving similar questions. It is recognized by this court and by the courts generally that a tax of this character is not a tax on property as such, but one upon the right of succession, a tax upon one for the privilege of succeeding to property. (See *In re Wilmerding,* 117 Cal. 284, [49 Pac. 181], and cases cited.) It was said in the case just cited "the same authority which confers this privilege may attach to it the condition

that a portion of the estate so received shall be contributed to the state." The act construed by the supreme court of Connecticut in *Appeal of Gallup,* 76 Conn. 617, [57 Atl. 699], was materially the same as our tax act, the description of property being "any property . . . which shall pass by will or by the inheritance laws of this state," etc. The court said that the design of this act was a tax based on the distribution of the net proceeds of the decedent's property, after payment of his debts and costs and charges of administration and after deduction of amounts and articles exempted, to the persons upon whom it devolves. The New York court of appeals said of a similar statute in *Estate of Gihon,* 169 N. Y. 443, [62 N. E. 561]: "The collateral inheritance tax does not attach to the very articles of property of which the deceased died possessed. It is imposed only on what remains for distribution after expenses of administration, debts and rightful claims of third parties are paid or provided for. It is on the net successions to the beneficiaries." In that case a deduction of certain fees and disbursements in a will contest was upheld. The court said that this was an expense of administration, and therefore chargeable to the estate and not to the legatees or devisees. In *Pepper's Estate,* 159 Pa. St. 508, [28 Atl. 353], the supreme court of Pennsylvania, construing a similar act, in holding that there should·be deducted from the amount upon which the tax was calculated a sum paid in compromise of a claim, said that the legatees were not liable thereon for the reason that the amount paid was never received by them, and that "under the act, it is only so much of the estate which actually passes to them by virtue of the will that is liable to the tax." Of a similar act, the supreme court of Iowa said in *Estate of Stone,* 132 Iowa, 140, [109 N. W. 457]: "The collateral inheritance tax is on the right to succession to property, and not on the property itself, and it is collectible out of each specific share or interest, not out of the general property of the estate," and in *Morrow* v. *Durant,* 140 Iowa, 437, [118 N. W. 781, 784], the same court held that money properly devoted by the executor to the erection of a monument to the deceased and thus taken from legatees, was not to be included, because ·the tax is only on the property that passes to the legatees, and that in such cases the money so used does not pass to the beneficiary. In *Wolfe's Estate,* 89 App. Div. 349,

353, [85 N. Y. Supp. 949, 953], it is said: "If no transfer is effected, because it turns out that there is no property to transfer, no tax can be collected." In *Estate of Thomas,* 39 Misc. 223, [79 N. Y. Supp. 571], in fixing the amount of inheritance tax, the court said: "Where the legal representative makes a proper payment in the course of administration, the transfer from the estate is subordinate and subject thereto," citing *Estate of Gihon.* In the *Matter·of Page,* 39 Misc. 220. [79 N. Y. Supp. 382], it was held that in view of a statute providing in effect that certain enumerated articles should go to the widow and minor child or children and not be considered as assets for the purposes of administration, such articles did not "pass" by will or by the intestate laws of the state, but that the beneficiaries took absolutely by the express terms of the statute and whether the decedent died testate or intestate, and that such property was not subject to the tax. *In the Matter of Maresi,* 74 App. Div. 76, [77 N. Y. Supp. 76], it was held, following *Estate of Gihon,* 169 N. Y. 443, [62 N. E. 561], that the costs and expenses of an action instituted by the executor of the will to obtain a judicial construction of the will and instructions as to distribution, must be deducted as a necessary expense of administration in estimating the amount of tax. No case cited or discovered by us hints at any different doctrine than that declared by these decisions, except, perhaps, the case of *Estate of Millward,* 6 Misc. 425, [27 N. Y. Supp. 287], where there is some language of the surrogate that may be construed as supporting a contrary view. But if so construed, it is but the expression of a single judge plainly in conflict with the views later expressed by both the supreme court of New York and the court of appeals of that state. All these cases are based not on the theory that there is any express or implied exemption provided by the tax act under consideration, but upon the theory that the act does not purport to impose the tax as to such property, being confined by its terms to such property as actually passed *to the beneficiary,* that is to his distributable interest. No substantial distinction can be found in any matter material to the question involved here between any of the acts so considered and our own act. The decision of this court in *Estate of Moffitt,* 153 Cal. 359, [95 Pac. 653, 1025], that the surviving wife's share of the community property is subject to this inheritance tax, was based

solely on the proposition established in this state by several prior decisions, that the wife takes such property solely by succession as an heir of the husband, and therefore "by the intestate laws of this state."

The provisions of our tax act clearly show that the tax imposed thereby is one solely upon the devisee, legatee, or heir, and one upon him only as to such property as he actually takes on distribution as devisee, legatee, or heir. It would appear to be a most absurd and inequitable provision that imposed a tax on one for the privilege of succeeding as heir, devisee, or legatee to certain property of the decedent, where the very property to which he is so held to succeed is lawfully diverted by the probate court to other purposes and never can be distributed to him. Suppose, in this very case, the real property set apart as a homestead had been devised by the will to another person than the wife. Suppose, also, that the money paid as family allowance exhausted the property available to pay a legacy given to still another person. Under the treasurer's theory that the property had passed to the devisee and the legatee, within the meaning of the act, at the moment of the death of deceased, the devisee and legatee would be liable for the whole tax thereon, although both devise and legacy had been wholly defeated, so far as any practical effect is concerned, by the orders of the probate court. As we have seen, the fact that the wife was here the devisee and legatee is of no consequence in determining the proper construction of this act. Happily no such conclusion appears to be warranted by the act. Section 12, relied on as implying an "exemption" as to debts due from a deceased, is rather a clear recognition that no tax was intended to be imposed as to property that was lawfully diverted by the probate court from the purposes declared by the will or by the laws of succession, the object thereof being simply to provide a method for the repayment to the legatee, devisee, heir, or next of kin of a proper proportion of the money theretofore paid by him as a tax where the property already delivered is diminished by the subsequent proving of debts against the decedent.

In view of what we have said, it is apparent that such cases as *Trippet* v. *State,* 149 Cal. 526, [86 Pac. 1084]; *Estate of Martin,* 153 Cal. 225, [94 Pac. 1053], and *Estate of Stanford,* 126 Cal. 112, [54 Pac. 259, 58 Pac. 462], are in no way per–

tinent to the question here involved. The doctrine of those cases is simply that the right of the state to the tax imposed by the act vests upon the death of the testator or intestate, and cannot be surrendered or limited by any subsequent act of the legislature. For instance, in *Estate of Stanford*, in the act in force at the death of the testator there was no exemption as to legacies or devises to nephews, nieces, or educational institutions. By an act enacted subsequent to his death, the original act was amended by providing for such exemptions, and it was specially provided that the amendment should apply to the estates of persons who had died prior to the amending act. It was very properly held that this could not be done and that the right of the state was determined by the act in force at the time of the death of the testator. This doctrine was affirmed in *Trippet* v. *State*, where it was held that the act in force at the death of the testator gave to the state a right which vested immediately upon such death, and which could not be surrendered by subsequent legislative act or by a repeal of the law under which the right became vested, as such a surrender would be a gift or donation from the state in violation of section 31 of article IV of the constitution. *Estate of Martin* is practically to the same effect. While undoubtedly correct, these decisions do not touch the point here under discussion. Whatever tax was imposed by the act in force at the death of the deceased, the right thereto vested in the state at the moment of his death, and could not be legally divested by any department of the state, executive, legislative, or judicial. But it was only as to *the tax imposed by such act* that the right so vested, and when it is determined that the act imposed no tax as to property lawfully diverted by the court in probate with the consequence that it could never be distributed to the devisee, legatee, or heir, it is apparent that no vested right of the state is impaired.

To summarize: Under the Tax Act of March 20, 1905, property of a decedent set apart absolutely as a homestead by the court in probate under the provisions of section 1465 of the Code of Civil Procedure, and moneys paid under order of the probate court under section 1466 of the Code of Civil Procedure, do not pass by will or by the intestate laws of the state, and the persons taking under such orders are not liable for any tax under such act; and the devisees, legatees, and

heirs to whom said property would have been distributed under the will or the succession laws of this state if such property had not been so diverted by the court in probate are not liable for any tax on account thereof, for such property never passed to them within the meaning of the act.

It follows that the learned judge of the trial court was correct in his conclusion as to the family allowance, but erred as to the real property set apart as a homestead. The tax fixed by the order was excessive, therefore, by $280.

It is ordered that the order of the superior court be and the same is hereby modified by reducing the amount of tax fixed thereby from $888.53 to $608.53, and as so modified the order is affirmed.

Shaw, J., Sloss, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.