In re Estate of Whitfield Sanford.

Charles W. Sanford et al., Executors, appellants, v. Saunders County, appellee.

FILED DECEMBER 14, 1911. No. 16,458.

1. **Taxation:** Power of Legislature: Inheritances. "The enumeration of subjects of taxation in section 1, art. IX of the constitution, is not exclusive. The legislature has power to provide for taxation upon inheritances." *State v. Vinsonhaler*, 74 Neb. 675.

2. ———: Inheritance Tax. The widow of a testator who takes real estate devised to her by his will in lieu of dower is not in a position to require the taxing authorities to exempt so much of such real estate as equals the value of her dower interest from the payment of an inheritance tax.

3. ———: ———. By the provisions of chapter 13, Ann. St. 1909, the personal property of a decedent is primarily liable for the pay-

ment of claims against his estate; and those to whom he has devised his real estate cannot avoid paying an inheritance tax thereon by agreeing to satisfy a claim of one of them against the estate out of such real estate.

4. ———: ———. Real estate devised by will passes to the devisee at the death of the testator, and its status under the law taxing inheritances is fixed at that time. An agreement between devisees to satisfy a claim against the estate in favor of one of them by a conveyance of a portion of such real estate to the claimant will not exempt it from liability for an inheritance tax.

5. ———: ———: INTEREST. By the provisions of section 11203, Ann. St. 1909, an inheritance tax bears interest from the death of the decedent, unless it is ascertained and paid within six months thereafter; and where his devisees have neglected to take any steps to ascertain or pay the same for more than two years after his death, they are not in a position to contest the payment of interest thereon.

APPEAL from the district court for Saunders county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*H. A. Reese,* for appellants.

*Jesse M. Galloway* and *Joseph F. Berggren, contra.*

BARNES, J.

Whitfield Sanford, a resident of Cass county, Iowa, departed this life in the month of August, 1905, leaving him surviving Hetta A. Sanford, his widow, and Charles W. Sanford, his son, who were his only heirs at law. By his will the bulk of his property was left to said widow and son, who were therein named as executors. Probate of the will was had in Cass county, Iowa, and the executors duly qualified and proceeded to administer the estate. At the time of the death of the testator he was the owner of a large amount of real estate and personal property situated in the state of Nebraska. The executors took no steps to ascertain the amount of the inheritance tax which the state was entitled to receive upon that portion of the estate, and about two

years after the death of the testator the county attorney of Saunders county, Nebraska, filed an application in the county court of said county for the appointment of appraisers to ascertain the value of said estate, so that the amount of the inheritance tax due thereon might be determined and collected. The county judge of Saunders county thereupon appointed appraisers, as provided by law, who qualified and made appraisements in the counties of Saunders, York, Butler, Lancaster, Seward, and Franklin, in which counties the real estate, which passed by the provisions of the will above mentioned, was situated. The value of said real estate was found to be $182,320, while the personal property was appraised at the sum of $40,657.85. On the request of the executors, the county court deducted the value of the personal property from the total value of said estate, and held that the same was not subject to an inheritance tax because its *situs* was in Cass county, Iowa, where the testator resided at the time of his death. There was also deducted from the value of the real estate the amount of $20,000, being the sum of $10,000 to each of the devisees under the will which was exempt from the levy of an inheritance tax under the laws of this state. After the above reductions were made there remained the sum of $162,320, which was held by the county court to be subject to and liable for an inheritance tax under the provisions of sections 11201-11220, Ann. St. 1909, known as the "inheritance tax law," and the amount of such inheritance tax was fixed at the sum of $1,623.20, upon which interest was charged from the date of the death of the testator, amounting to $333.30. The executors were ordered to pay said sum to the county treasurers of the aforesaid counties in proportion to the appraisements made therein, and to file receipts for such payments. It appears that on or about the 17th day of January, 1908, the executors paid into court the sum of $1,044.44, which they claimed was sufficient to discharge the inheritance tax for which the estate was liable, and appealed from the order of the

In re Estate of Sanford.

county court. They thereafter filed their petition in the district court for Saunders county, setting forth the facts above stated, and assigned four distinct grounds therein for the reversal of the order of the county court.

It was first alleged that there is no valid law in the state of Nebraska requiring the payment of an inheritance tax. The second allegation was, in substance, that Hetta A. Sanford as the widow of the testator was entitled to dower in the lands devised by his will, and that her dower interest was not subject to the levy of an inheritance tax. It was further alleged that Charles W. Sanford, the son of the testator, had a claim against the estate of his father amounting to $35,524.95 for services rendered as clerk during the last 11 years of his father's life, and that it had been agreed between the executors that the claim should be fully paid by transferring to said Charles W. Sanford from the said estate certain real estate situated within the state of Nebraska in excess of the amount of property which said Charles W. Sanford should have received under the provisions of his father's will, and that therefore that sum was not subject to the inheritance tax imposed by the county court, and that it should be deducted from the appraised value of said real estate situated in Nebraska. And, finally, it was alleged that the computation of interest from the date of the death of the testator was void, and was made without authority of law.

To this petition, and each of the four grounds mentioned therein, the county attorney of Saunders county demurred, for the reason that the petition failed to state facts sufficient to constitute a defense to the order of the county court finding the amount and directing the payment of the inheritance tax above mentioned. Upon a hearing in the district court, the demurrer was sustained and the order of the county court was affirmed, and from that judgment the devisees, who are the executors above mentioned, have brought the case to this court by appeal.

The contention that the law requiring the payment of

an inheritance tax is void was settled by the decision in *State v. Vinsonhaler,* 74 Neb. 675, where the law was upheld; and as the appellants seem to have abandoned that assignment, it will receive no further· consideration.

The first question to be determined by us is the claim that appellants should have been allowed to deduct from the gross value of the real estate situated . within this state the amount of the widow's dower. On this question there seems to be some conflict in the authorities. The courts of New York and Pennsylvania, in construing the inheritance tax laws of those states, have held that the dower interest of the widow is not taxable. *In re Weiler's Estate,* 122 N. Y. Supp. 608; *Commonwealth's Appeal,* 34 Pa. St. 204. In *Estate of Kennedy,* 157 Cal. 517, 108 Pac. 280, the supreme court of California held that the homestead and statutory allowances pending the settlement of the estate of the deceased were exempt from the succession taxes.

The supreme court of Illinois, however, construing the provisions of its inheritance tax law, of which our own is almost a literal copy, held in *Billings v. People,* 189 Ill. 472, 59 L. R. A. 807, that dower was subject to the payment of the inheritance tax. That was a case where the widow renounced the provisions of the will of her deceased husband and took dower. On appeal to the supreme court of the United States the judgment of the state court was affirmed. *Billings v. Illinois,* 188 U. S. 97.

As we view the record, we are not required to determine that question, for it appears in the instant case that the widow did not renounce the will, but took her share of the real estate under and according to its provisions. By that course she brought herself squarely within section 11201, Ann. St. 1909, which reads, in part, as follows: "All property, real, personal and mixed, which shall pass by will or by the intestate laws of this state from any person who may die seized or possessed of the same while a resident of this state, or, if decedent was not a

resident of this state at the time of his death, which property or any part thereof shall be within this state, or any interest therein or income therefrom, which shall be transferred by deed, grant, sale or gift made in contemplation of the death of the grantor, or bargainor, or intended to take effect, in possession or enjoyment, after such death, to any person or persons or to any body politic or corporate in trust or otherwise, or by reason thereof any person or body corporate shall become beneficially entitled in possession or expectation to any property or income thereof, shall be and is subject to a tax, at the rate hereinafter specified, to be paid to the treasurer of the proper county for the use of the state, and all heirs, legatees and devisees, administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed." We are therefore of opinion that the widow, by taking under the will, instead of asserting her right to dower, is not in a position to claim the exemption for which she now contends.

Appellants also strenuously insist that they should have been allowed to deduct the claim of Charles W. Sanford for $35,524.95 against his father's estate from the gross value of the real estate as returned by the appraisers before estimating the amount of the inheritance tax. There seems to be two good and sufficient reasons for denying this relief. It appears that at the time of his death the testator was the owner of more than $40,000 worth of personal property in this state, which, under the provisions of chapter 13, Ann. St. 1909, was primarily liable for the payment of this claim. The district court held that appellants were entitled to withdraw this property from taxation because of their claim that its *situs* was in the state of Iowa where the testator resided at the time of his death; but by so doing, they will not be permitted to make their claim payable out of the real estate, and thus, to that extent, escape the payment of the inheritance tax. The other reason for a denial of

this claim is that at the time of the death of the testator the real estate situated in this state, the value of which is now sought to be taxed, passed by the terms of the will to the appellants. Its status, so far as the inheritance tax law was concerned, was at that time fixed and determined, and no agreement which the devisees, as executors, should thereafter make between themselves in regard to the satisfaction of this claim could in any way affect the right of the state to ascertain and collect its inheritance tax. The district court was therefore right in its determination of this question.

Finally, it is contended that the taxing authorities were not entitled to interest on the amount of the inheritance tax from and after the death of the testator, and before such amount was ascertained. It is urged as a reason for this contention that it was not possible at that time to ascertain the value of the estate, and that interest should only be computed after such value was in fact ascertained. This contention is in direct conflict with section 11203, Ann. St. 1911, which provides: "All taxes imposed by this act, unless otherwise herein provided for, shall be due and payable at the death of the decedent, and interest at the rate of seven per cent. per annum shall be charged and collected therefrom for such time as such taxes are not paid; provided, that if said tax is paid within six months from the accruing thereof, interest shall not be charged or collected thereon, and in all cases where the executors and administrators or trustees do not pay such tax within one year from the death of the decedent they shall be required to give a bond, in the form and to the effect prescribed in section two of this act, for the payment of said tax together with interest." It cannot be successfully contended that the appellants could not have ascertained the value of the taxable estate within six months after the testator's death. By so doing, and by the payment of the tax within that time, they could have avoided the payment of any interest whatsoever. It appears from their peti-

tion that they took no steps to that end, and that by their delay they compelled the county attorney of Saunders county to institute proceedings, as late as two years after the death of the testator, to ascertain and collect the amount of the inheritance tax. Therefore, they are in no position to claim exemption from the payment of interest, as provided by the section of the statute above quoted.

A careful examination of the record satisfies us that the judgment of the district court was right, and it is therefore

AFFIRMED.

REESE, C. J., being disqualified, took no part in the decision.

FAWCETT, J., dissenting.

This case was heard in the court below upon a general demurrer to a pleading filed by the executors, which has been designated by both parties and by the trial court as a "petition." As they have seen fit to so designate it, I will do likewise.

The petition alleges: That Whitfield Sanford, at the time of his death, was a resident of Cass county, Iowa; that he died August 4, 1905, testate; that the district court for Cass county, Iowa, took jurisdiction to administer said estate; that the administration thereof is still pending and said court still retains full and exclusive jurisdiction of all matters connected with the settlement of the estate.

That the deceased kept the control and management of his business; that all of his personal property was held in said Cass county; that he had no agent in Nebraska with authority to control or reinvest money; that the will left the bulk of his estate to the appellants, his wife and son.

That the county court of Saunders county without authority, upon suggestion of the county attorney, ap-

pointed appraisers for the purpose of levying the inheritance tax; that the appraisers duly filed their report, from which appellants appealed, first, to the county court, and then to the district court.

That the estate is not liable, for the reason that no valid law gives authority or jurisdiction to the county court of Saunders county, or to any court in Nebraska, to levy an inheritance tax.

That, in ascertaining the value of the real estate in Nebraska, the appraisers and the courts below refused to deduct from such appraisement the dower interest of the appellant widow; that to the extent of her dower, under the law in existence at the time of the death of Mr. Sanford, the estate was not subject to tax.

That at the time of Mr. Sanford's decease, and for eleven years prior thereto, the appellant Charles W. Sanford, one of the executors of said will, and a legatee thereunder, was in the employ of deceased as his clerk, under an agreement that Charles should be compensated therefor by the deceased; that it was agreed between Charles and the deceased, during the life of the latter, that, in case Charles should not demand or withdraw from the business of the deceased money due him for such services, the amounts due him were to be allowed to draw interest until the final settlement should be made; that after the death of Mr. Sanford the widow, who was one of the executors, and Charles had a settlement and adjustment of the claim of Charles against deceased, with the result that it was ascertained and agreed that the estate was indebted to Charles, a resident of Nebraska, in the sum of $35,524.95, which amount it was agreed Charles should receive from said estate; that by the said agreement it was stipulated and agreed that the claim of Charles should be paid by transferring to him from the estate of deceased real estate in Nebraska in excess of the property that Charles should receive from the estate as one of the beneficiaries of the will; that, in determining what portion of the real estate in Nebraska

Charles should receive, there was set over to him certain real estate of the value of the agreed claim in excess of the amount of property Charles would have been entitled to receive under the law; "this being in full settlement and satisfaction of said claim of Charles W. Sanford, and so accepted by him."

That the county court wrongfully included in the valuation the said sum of $35,524.95, and levied a tax thereon and included it in the amount found due from the estate.

That the agreement and settlement of the claim of Charles against the estate were made and entered into with the full consent and understanding of the executors of the estate, and were made for the benefit of the estate; that the county court had no authority or jurisdiction to include said amount in ascertaining the amount of inheritance tax to be paid, for the reason that the claim was a just and proper claim against said estate, and was properly paid, settled and satisfied, and the amount thereof should have been deducted from the value of the real estate in Nebraska; said real estate not having been received by Charles "by virtue or reason of any inheritance or bequest or under the intestate laws of the State of Nebraska."

That at the time of the death of Mr. Sanford, and at all times thereafter until the appraisement of the real estate, the amount of inheritance tax due from the estate was unknown and unascertainable; that the only method or manner of ascertaining the value of the real estate in Nebraska was through the appraisement so made as ordered by the county court; that appellants had no knowledge of and no way of ascertaining the amount which could be claimed due as an inheritance tax until such appraisement had been filed; that, in determining the amount to be paid, the county court wrongfully and without authority of law ordered payment of interest from August 4, 1905, until the same should be paid; that said computation of interest was wrongful, without

authority of law, and that the estate should not be subject to the payment of any interest prior to the time of finally ascertaining and determining the amount or value of the taxable estate in Nebraska.

The prayer of the petition is: (1) That the dower interest of the widow be deducted from the total value of the estate. (2) That the amount of the claim of Charles be deducted. (3) That the amount of the tax due from the estate should not draw interest until the final determination thereof. (4) That the assessment of an inheritance tax against the estate may be decreed as without authority of law, and as null and void, and of no force; and for general relief.

The record before us contains nothing more than the petition above set out, the general demurrer of defendant, and the journal entry of the judgment below. At first blush it might seem that the judgment would have to be affirmed for want of a sufficient transcript; but on more careful consideration it is apparent that both sides thought that the petition presented everything necessary to settle the questions of law involved, and thereby determine the rights of the parties. With that purpose in view, it evidently was not thought necessary to encumber the record with the transcript of the proceedings in the county court. In this I think counsel were right. Very few of the important facts and figures referred to in the majority opinion appear in the record, as will be observed by the most casual reading of the petition. They were, in my judgment, improperly gleaned from the brief of counsel for appellee. As he has seen fit to rest upon his demurrer to the petition, he should be held to the admitted facts averred in the latter. Upon the face of the record, therefore, the judgment should be reversed. Passing that, it will be seen that three important questions are presented. They will be considered in the order in which they appear in the petition.

1. Should the value of the widow's dower have been

deducted? I think it should. Our inheritance tax law (laws 1901, ch. 54) was first adopted in 1901. It was approved April 1, in that year. The title of the act is, "An Act to tax gifts, legacies and inheritances in certain cases and to provide for the collection of the same." The right of dower cannot by any reasonable process of construction be held to be a gift, a legacy or an inheritance. *Billings v. People,* 189 Ill. 472, under an act from which it is asserted ours was copied, holds that dower is subject to the inheritance tax, and it is insisted that, inasmuch as *Billings v. People* was decided before our act was adopted, we are bound by the holding in that case.

Counsel for the appellee places great stress in his brief upon an assertion that *Billings v. People* was appealed to the United States supreme court (*Billings v. Illinois,* 188 U. S. 97) and affirmed in that court. The majority opinion makes the same statement. In justice to the fairness of counsel, I conclude that he has not read that case as it is reported in the United States supreme court reports. I have before me the lawyer's edition, 47 L. ed. 400. The syllabus (entire) reads: "The equal protection of the laws is not denied by the Illinois inheritance tax law because, under that statute as interpreted and enforced by the state courts, certain life estates may be taxed when the remainder is to lineal descendants of the decedent, but not when the remainder is to collateral heirs or strangers in blood." In the opinion it is stated: "The widow was an appellant in the supreme court of the state, but she is not a party here." That case was taken to the supreme court of the United States by devisees other than the widow, so that the holding of the supreme court of Illinois upon the question of dower was not presented to, or in any manner considered by, the supreme court of the United States. I regret that it was not, as I feel very confident that that eminent court would have declined to follow the reasoning and holding of the Illinois court. I might say here that,

whether our act was copied from the Illinois act or not, that act, as stated by the supreme court of that state in *People v. Griffith*, 245 Ill. 532, 539, was taken from the statute of New York, of 1887. Would it be unreasonable to say, in the absence of *proof* as to which statute was followed, that our legislature followed the older statute, which had been in force for 14 years, and many of its provisions construed by the courts of that state? To my mind the rule that, where one state adopts a statute of another state which has received judicial construction, it is presumed that the legislature intended the statute should receive the same construction by the courts of the state adopting the statute, like all other general rules, has its exceptions. That the case at bar should be held an exception to the rule stated is made clear by the fact that *Billings v. People* made its first appearance in print in 59 N. E. 798, March 29, 1901, and our act under consideration here was approved three days later. The thought that any member of our legislature knew of that decision when the act was passed, or that the governor had ever heard of it when he signed the same, cannot be seriously considered. But, be that as it may, this court has stated how far it will consent to be bound by the construction of a statute of another state which has been adopted in this state. In *Morgan v. State*, 51 Neb. 672, 693, in an opinion by Post, C. J., we said that the decision in such a case must "be regarded as a construction of the statute, to be ignored or rejected only for reasons which would require the overruling thereof had the decision been pronounced by this court, and in that light it will now be examined." I think that is the very extent of the limit to which we should go in holding that we are bound in such a case. In accordance with the rule announced by Post, C. J., I am considering *Billings v. People* as if that decision had been pronounced by this court, and, so considering it, I unhesitatingly assert that the decision is not sound and should not be followed. If we follow *Billings v. People*,

we must not only read into the act that which it does not contain, but we must enlarge the title to the act itself. If Mrs. Sanford had declined to take under the will and had elected to take under the statute, so far as the value of her dower is concerned, there is no theory upon which, under our act, the value of that dower could have been taxed. It really needs no citation of authorities to support the statement that a tax of this character cannot be aided by construction.

"(6) The meaning of section 1 of the inheritance tax law as to what property of nonresident decedents shall be subject to the tax is not entirely clear, and the language thereof should not be extended beyond the clear import of the words used, in order to bring property within the provisions of the act and subject it to the tax." *People v. Griffith,* 245 Ill. 532. It seems to me that if the Illinois court had had that very correct rule in mind at the time it decided *Billings v. People, supra,* the decision in that case would have been the very opposite of what it was.

In *People v. Griffith,* it is further said: "(8) where one state adopts a statute of another state which has received judicial construction, it is presumed that the legislature intended the statute should receive the same construction by the courts of the state adopting the statute, *unless such construction is in conflict with the spirit and policy of its laws.*" (Italics are mine.) Under the rule thus stated, we are not bound by the holding in *Billings v. People,* as in my judgment that case is squarely in conflict with the spirit and policy of the laws of this state, which are that statutes levying taxes of any kind, which are special in their nature, will be strictly construed, and will never be aided by construction so as to extend them beyond the clear import of their terms. While I freely concede that the legislature has the power to pass an act imposing a tax of this character upon a widow's dower, I assert that it has not done so; and, until the legislature has expressly

made dower subject to such a tax, the courts are powerless to do so. In such a case, where the legislature stops the court should stop. A woman does not obtain a dower interest in property by the grace of, or as a gratuity from, her husband. It is hers, absolutely, beyond his control. It is an interest which he cannot alienate, which he cannot encumber, which his creditors cannot reach, which she alone, by deed, can alienate. As said by this court in *Butler v. Fitzgerald,* 43 Neb. 192: "When lawful marriage of a man and woman and the ownership of real estate by the former concur, an inchoate dower right attaches in the nature of a charge or incumbrance upon the real estate of the husband; and when such right has once attached, it remains and continues a charge or encumbrance upon the real estate, unless released by the voluntary act of the wife or be extinguished by operation of law, and is consummate upon the death of the husband."

In *Motley v. Motley,* 53 Neb. 375, we held: "The statutes of the state expressly provide how a widow may be lawfully barred of dower in the lands of which her husband died seized, and this bar is made to depend upon her voluntary act."

In *In re Weiler's Estate,* 122 N. Y. Supp. 608 (March, 1910), the syllabus states: "A widow's dower estate in lands of her deceased husband, which became vested on her marriage and consummate on the death of her husband, independent of the husband's will, and not by virtue thereof, was not subject to transfer tax." In the opinion it is stated: "The widow's estate of dower in the lands of the decedent was property, which became vested as an inchoate estate upon her marriage and consummate upon the death of her husband, independent of the will, and not by virtue thereof. (Citing numerous cases.) It was, therefore, not subject to transfer tax, and in assuming it to be so both parties were in error when the order fixing tax was made." In *In re Green's Estate,* 124 N. Y. Supp. 863 (May, 1910), the syllabus

states: "Where a wife, a resident of the state, dies without a will, leaving a husband and no descendants, the husband does not take her property under the intestate laws of the state, and there is no taxable transfer thereof under tax law." The two cases last above cited were decided in surrogate's court in New York county and Kings county, respectively. Neither case, so far as I have been able to find, reached the court of appeals. While they are not decisions of the court of last resort, they are decisions of two surrogate's courts, · the judges of which in late years have always been lawyers of high standing.

In *Commonwealth's Appeal,* 34 Pa. St. 204, it is held: "A testator devised his whole estate to his executors, in trust for legatees and devisees; the widow refused to take under the will, but subsequently, by an arrangement with the executors, approved by the orphans' court, accepted the sum of $80,000, which was less than her share of the estate, and relinquished her claim to the residue. *Held,* That she took this sum under her paramount title as widow, and not as a payment out of the fund bequeathed to the executors in trust; and that it was not, therefore, subject to the collateral inheritance tax."

In *Estate of Kennedy,* 157 Cal. 517, it is stated in the syllabus: "A homestead right, or a right to have a homestead, is not a right which vests under the law of succession. It is a right bestowed by the beneficence of the law of this state for the benefit of the family. Setting apart a probate homestead is a part of the proceeding in the probate court, as much so as the family allowance." There are other matters passed upon in this case. The case is an interesting one, and shows clearly how that court would hold upon the question of the right to tax dower.

I therefore proceed with the further consideration of this point upon the assumption that, upon the death of Mr. Sanford, the dower interest, which Mrs. Sanford had

theretofore held and owned subject to be defeated only by her own deed or the predecease of her husband, became consummate. It then ceased to be an inchoate right, and, *eo instanti*, became a vested interest in all of the lands in Nebraska of which Mr. Sanford died seized; and to the extent of that vested interest she was entitled to a share of his lands without payment of any inheritance tax. If she saw fit to avail herself of an option given her, in the will of her deceased husband or under the statutes, to either take *that* interest in the land or *another and different* interest, and that other and different interest exceeded in value her vested interest *which she was exchanging therefor*, she could only be properly charged with the excess value. To my mind it is precisely the same as if she took by statute, as her dower, a certain specific tract, say section one, and the provision in the will was that she might take, in lieu thereof, sections two and three; in such a case she would be entitled to deduct from the value of sections two and three, which she was to receive under that provision, the value of section one, which she was giving up.

In *Isenhart v. Brown,* 1 Edw. Ch. (N. Y.) *411, it is held: "A bequest in lieu of dower, and the acceptance of the same, amounts to a matter of contract and purchase; and the wife is to be paid the bequest in preference to other legacies and without abatement. But the debts are to be paid first." In the opinion (p. *413) the vice chancellor says: "It is the price put by the testator himself upon that right, and which she is at liberty to accept. Her relinquishment of dower forms a valuable consideration for the testamentary gifts. In this point of view, she becomes a purchaser of the property left to her by the will. So, on the other hand, the husband offers a price for his wife's legal right of dower which he proposes to extinguish; and, if she agrees to the terms, she relinquishes it and is entitled to the price. It is, therefore, a matter of convention or contract between them; and what she thus becomes entitled to

receive is not by way of bounty, like other general bequests, but as purchase money for what she relinquishes, and which, consequently, must be paid in preference to other legacies; they being merely voluntary."

In *Blatchford v. Newberry*, 99 Ill. 11, the sixth paragraph of the syllabus holds: "A provision by will in lieu of dower is, in fact and in legal effect, a mere offer by the testator to purchase out the dower interest for the benefit of his estate." That part of the opinion upon which the above syllabus is predicated will be found on pages 55 to 62 inclusive. There are numerous other cases to the same effect as those last above cited, one (which I have misplaced and will not take the trouble to try to find again) from the supreme court of the United States. To my mind these cases clearly show that, to the extent of the value of her dower interest, Mrs. Sanford took nothing by way of "gift, legacy or inheritance" from her husband, and that, if she saw fit to exchange her vested interest of that value for another interest which was tendered her in lieu thereof, it was simply an exchange of one interest for another, and she was entitled to have the value of that which she was giving deducted from that which she was to receive.

2. Should the property conveyed to Charles in satisfaction of his claim have been deducted? The district court held that it should not. In this I think the court erred.

In the light of the view that I take of this branch of the case, the authorities cited on page 17 of brief of appellee are unimportant. The question as to whether or not the rules of law in reference to taxation *of property* are applicable is not involved; nor is the question of the possibility of double taxation; nor is it material for the consideration of this point whether the act of our legislature under consideration constitutes a tax upon property or upon the right of succession. The only question involved by the admitted allegations of this

petition are: Can the amount of a claim of a citizen of this state for services rendered a nonresident in his lifetime, and which, after the death of such nonresident debtor, is ascertained, adjusted and paid by the executors of his will, be taxed as a gift, legacy or inheritance? I say, *No.*

The petition alleges and the demurrer admits the following facts: That the decedent left no personal property in this state, but that all of such property was owned and held by him and taxed in Cass county, Iowa; that Charles W. Sanford was in the employ of the decedent for eleven years prior to his death, under an agreement that he should be paid for his services, and that, in case he should not demand or withdraw from the business of the deceased the amounts due him for such services, such amounts were to draw interest until a final settlement or adjustment should be made; that, after the death of the testator, the widow of the deceased, who was one of the executors, and Charles had a settlement and adjustment of the claim for such services, and that as a result of such settlement and adjustment it was "ascertained and agreed" that the estate was indebted to Charles in the sum of $35,524.95. which amount it was agreed Charles should receive in real estate situated in Nebraska; and that, under such agreement, a sufficient amount of real estate in Nebraska was set over to Charles in full settlement and satisfaction of his claim, and was so accepted by him.

From the above admitted facts I conclude that the law which requires that the personal estate of a decedent be first exhausted before recourse is had to the real estate does not apply. A citizen of this state who has a claim against a nonresident, or against a nonresident estate, is not required to go to the domicile of such nonresident or nonresident estate and litigate his claim in the courts of that jurisdiction, when there is property, either real or personal, situated in this state. It is possible that, if there had been personal property of

the decedent in this state, Charles would have been obliged to first exhaust that personal property before he could proceed against the real estate, but, where there was no personal property in this state, he could proceed at once against the real estate. It perhaps would have been better practice for him to have made application to the county court of some county in this state, in which real estate of the decedent was situated, for the appointment of an administrator with the will annexed, and have filed his claim with, and had it allowed by, that court; but I do not think he was required to do that when the executors of a solvent estate, who were also the sole beneficiaries under the will of decedent, came into this state and, for the purpose of saving expenses of administration here, took the matter up with him, "ascertained" the amount justly due him, and set over to him a sufficient amount of the estate situated in this state to satisfy such claim. In Schouler, Executors, (3d ed.) sec. 176, it is said: "But may not the title and authority of a foreign domiciliary representative be voluntarily recognized and debts paid him, or other assets voluntarily surrendered to him there? The doctrine of the English courts is that such payment or surrender affords no protection against the claim of a local administrator. A preference for the English doctrine seems to be expressed in Justice Story's treatise, though he had judicially affirmed the contrary in a circuit decision. The supreme court of the United States, however, has maintained the validity of such payments or delivery of the assets, as between different states, so as to discharge the local debtor or possessor; and the general current of American authority supports this doctrine; there being, it is assumed, when such payment or delivery was made, no local administration." Where there is no local administration, as in the case at bar, I see no reason why the converse of the above proposition should not be given the same legal sanction. If I, having in my hands assets belonging to a nonresi-

dent at the time of his decease, can voluntarily deliver up those assets to a domiciliary executor, and thereby be absolved from all liability for such assets, why should not the same domiciliary executor be authorized to save his estate costs and expenses by recognizing a claim held against his estate by a nonresident creditor, when said claim is known and admitted to be correct, and satisfy the claim by turning over to such creditor a sufficient amount of property situated in the state where such creditor resides? If he does so, who shall pass upon the question of his authority to make such settlement, or upon the question as to whether or not such settlement was beneficial to the estate? I answer: The court from which such executor's appointment emanated. I do not think that a court of this state can, in any kind of an action where the above facts are alleged and admitted to be true, go behind such settlement, adjustment and satisfaction of such claim.

It is suggested by one of my associates that the act of the executors in allowing this claim was without authority and void. The only theory upon which we could say that is that the district court for Cass county was without power to authorize the executors to make such a settlement; for, if it had such power, then it must be presumed that the executors had first obtained such authority. But, conceding that the Iowa court did not have power to grant such authority, the fact still remains that, under the admitted allegations in the petition, appellee has not been prejudiced by the act of the executors. I think it will not be questioned by any of my associates that, after the death of Mr. Sanford, Charles might have applied for and obtained ancillary administration in this state, and secured the appointment of an administrator with the will annexed, and could have filed his claim and had it allowed; and, there being no personal property in this state, could have obtained leave to sell the real estate to pay the claim. If that course had been pursued and evidence introduced

upon the hearing of the claim establishing the facts admitted in this case to be true, the county court would have had no alternative but to allow the claim precisely as it was "ascertained" and adjusted by the executors in this case; and, upon allowing that claim, the county court would have been compelled to deduct the amount thereof from the value of the real estate situated in this state, and the residue only would have been liable for an inheritance tax.

In *In re Estate of Stone*, 109 N. W. 455 (132 Ia. 136), the third paragraph of the syllabus states: "A contract between the beneficiaries in a will, including a collateral legatee, renouncing the provisions of the will and providing for a division of the property, was valid and enforceable, though its effect was to deprive the state of a collateral inheritance tax otherwise assessable on the legacy to the collateral legatee." The reasoning in that case, applied to the case at bar, renders the fact that appellee, as a result of the adjustment of the claim of Charles by the beneficiaries under the will, may be deprived of an inheritance tax upon the amount of that adjustment immaterial.

3. Should the amount of whatever tax is found due draw interest from the date of the death of a testator, or from the date of the final determination of the amount of such tax?

At the oral argument I was inclined to the latter view; but on careful examination of the question I have reached a different conclusion. The reasoning of Steele, J., in *People v. Rice*, 40 Colo. 508, 91 Pac. 33, covers every phase of the question, and I am inclined to agree with the learned judge that "these are matters which should have appealed to the legislature; but the legislature, having before them the laws of other states containing more liberal provisions with respect to such matters, did not make provisions for a rebate of interest under such conditions, and this department, therefore, cannot grant relief."

The fourth point, that the inheritance tax law is null and void, is without merit.

SEDGWICK, J.

I concur in the view that lands taken by the widow under the will in lieu of dower are not subject to inheritance tax, except as to the excess in value of such lands over the value of the dower interest; and also in the suggestion that the majority opinion recites matters not contained in the pleading demurred to, nor anywhere in the record.